# NUTT *v.* KNUT.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 78. Argued November 29, 1905.—Decided January 2, 1906.

An attorney was employed to prosecute a claim against the United States; the contract which was in writing provided that he should prosecute it before the courts, officers and departments of the Government and Congress; that he should receive as compensation a sum equal to a specified percentage of the amount allowed, the payment whereof was made a lien upon the recovery. The prosecution was successful and the amount allowed was collected by the claimant himself. The attorney sued in the state court on the contract and recovered a judgment, his claim being resisted on the ground that the contract was void under § 3477, Rev. Stat., prohibiting transfers of claims against the United States, and also that being for lobbying services was void against public policy. He also sought a recovery upon a *quantum-meruit*. He moved to dismiss the writ of error on the ground that there was no Federal question, *held* in affirming the judgment that

A party who insists in the state court that a judgment cannot be rendered against him consistently with a statute of the United States asserts, within

the meaning of § 709, Rev. Stat., a right and immunity under such statute, although it might not give him a personal or affirmative right, enforceable in direct suit against his adversary, and a writ of error will lie from this court to review the judgment denying the existence of such right or immunity. The contract, so far as it gave a lien on the amount allowed, was void under § 3477, Rev. Stat., but the provision agreeing to pay the compensation fixed was not in violation of the statute and could stand alone.
The state court having held, on evidence taken in that regard, that the suit was not one for lobbying services, this court accepts that view of the case.

THIS suit was brought in the Chancery Court of Adams County, Mississippi, the plaintiff being S. Prentiss Knut, defendant in error, and the defendants being the administrator, heirs and devisees of Haller Nutt, deceased.

It was based upon a written contract between the late James W. Denver and the (then) executrix of Haller Nutt, deceased, as follows: "That the party of the first part (Denver) agrees to take exclusive charge and control of a certain claim which the party of the second part (executrix of Nutt's estate) holds against the Government of the United States, for the use of property and for property of which the said Haller Nutt and his estate was deprived by the acts of officers, soldiers and employés of the United States in Louisiana and Mississippi, in the years 1863, 1864 and 1865, amounting to one million of dollars, more or less, and to prosecute the same before any of the courts of the United States, and upon appeal to the Supreme Court of the United States, or before any of the departments of Government, or before the Congress of the United States, or before any officer or commission or convention specially authorized to take cognizance of said claim, or through any diplomatic negotiations as may be deemed by him for the best interests of the party of the second part. And in consideration therefor the party of the second part agrees to pay the party of the first part a sum equal to $33\frac{1}{3}$ per cent of the amount which may be allowed on said claim, the payment of which is hereby made a lien upon said claim and upon any draft, money or evidence of indebtedness which may be issued thereon. This agreement

not to be affected by any services performed by the claimant, or by any other agents or attorneys employed by him. All expenses of printing, costs of court and commission fees for taking testimony are to be charged to the party of the second part, and the party of the second part agrees to execute from time to time such powers of attorney as may be convenient or necessary for the successful prosecution and collection of said claim. No revocation of any authority conferred on the party of the first part by this agreement or any power of attorney relating to the business covered by the same to be valid."

On the same day the executrix of Nutt executed to Denver a power of attorney, constituting the latter her attorney "irrevocable," for her and in her name and stead "to prosecute a certain claim against the Government of the United States, for property used and for property of which said Haller Nutt and his estate was deprived by United States officers, soldiers and employés in Louisiana and Mississippi, amounting to one million dollars, more or less, before any court of the United States, or before any of the departments of the Government, or before the Congress of the United States, or before any officer or commission or convention specially authorized to take cognizance of said claim, or through any diplomatic negotiations, to collect the same; and from time to time to furnish any further evidence necessary, or that may be demanded, giving and granting to my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present at the doing thereof, with full power of substitution and revocation, and to receipt and sign all vouchers and bonds of indemnity or appeal and to indorse all drafts and vouchers in my name, either by or without indicating it is done by procuration, which may be requisite in the prosecution or collection of said claim, hereby ratifying and confirming all that my said attorney or his substitute may or shall lawfully do, or cause to be done by virtue hereof."

The petition shows, and it is not disputed, that the plaintiff succeeded to all the rights, whatever they were, of Denver under the above contract, and that as the result of his labors Congress at different times appropriated, on account of the Nutt claim, the sums of $35,556.51 and $89,999.88. 23 Stat. 552, 586; 32 Stat. 207, 212. Prior to the bringing of the present suit the plaintiff had received his "due share" of the first appropriation, but has not received his full part of the last one. He therefore sought payment, in accordance with the contract, for the balance due him on account of the said sum of $89,999.88 appropriated to and received by the Nutt estate.

The plaintiff subsequently amended his petition, and asked that in the event of his not being entitled to compensation under the Denver contract he have judgment for such sum as his services were reasonably worth, which he alleged to be $30,000.

Some of the defendants by their answers put the plaintiff upon proof of his case but submitted to the court the question of the reasonableness of his claim for fees.

Three of the defendants while not denying that plaintiff had been recognized by the executrix and subsequent administrators of Nutt's estate as the attorney of record against the United States Government, yet denied any legal liability of the estate by reason of such recognition. They averred that "the original contract and power of attorney as assignee of which petitioner claims to recover from the present administrator 33⅓ per cent of said sum of $89,999.88 were contrary to good morals and public policy, were null and void, so far as they undertook to vest a right to a contingent fee in said Denver, and conferred upon said Denver no rights for the recovery of any fee against this estate which a court would recognize and enforce. And respondents further charge that said petitioner, as assignee of said Denver, occupies no better position than his assignor had, and that as such assignee he has no standing in this court for the enforcement of said void contract, or for the enforcement of any claim whatever for professional services rendered by him, or alleged to have been rendered by him in behalf of said

estate in connection with said claim against the United States Government.''

Upon the final hearing of the case in the court of original jurisdiction the chancellor rendered a decree holding that the Denver contract was ''violative of the United States statute laws, and being further of the opinion that complainant in the prosecution of said claim under said contract before the Congress of the United States, in procuring and attempting to procure appropriations for the payment thereof, did procure personal solicitations to be made of members of Congress of the United States in behalf of said claim, and for the reasons stated is not entitled to the relief prayed for in his petition, doth order, adjudge and decree that complainant's petition be and the same is hereby dismissed at his cost, for which let execution issue.''

Upon appeal to the Supreme Court of Mississippi the judgment was reversed, and that court, proceeding to render such decree as in its opinion should have been rendered, adjudged that the plaintiff was entitled ''to his prayer for $33\frac{1}{3}$ per cent of the amount collected by his administrator, $89,993.83, in full for any advance made by him and all services, less any payments made.'' 35 So. Rep. 686. The cause was remanded for an account to be taken and for an order directing the administrator to pay to Knut any balance of that per cent unpaid. The accounting was had in the inferior state court, Knut being charged with $10,000 paid on June 10, 1902, and allowed interest. The result was a decree that the plaintiff have and receive from the administrator of Haller Nutt's estate the sum of $22,143.30, with six per cent interest. That decree, upon appeal, was affirmed by the Supreme Court of Mississippi.

*Mr. A. S. Worthington* for plaintiffs in error:

The final decree in the state court is based solely on the decision that the contract is not void under § 3477, Rev. Stat.; this raised a Federal question and this court has jurisdiction. § 709, Rev. Stat.; *Udell v. Davidson*, 7 How. 769; *Walworth* v. *Kneeland*, 15 How. 348; *Daniel* v. *Tearney*, 102 U. S. 415; *An-*

*derson* v. *Carkins*, 135 U. S. 483; *Bank* v. *Townsend*, 139 U. S. 67; *McCormick* v. *Bank*, 165 U. S. 538; *Conde* v. *York*, 168 U. S. 642; *Price* v. *Forrest*, 173 U. S. 410; *Allen* v. *Arguimbau*, 198 U. S. 149.

The contract is void under § 3477, Rev. Stat. *Trist* v. *Child*, 21 Wall. 441; *Spofford* v. *Kirk*, 97 U. S. 484; *Hager* v. *Swayne*, 149 U. S. 242; *Ball* v. *Halsell*, 161 U. S. 72; *Owens* v. *Wilkinson*, 20 App. D. C. 51; *Tool Co.* v. *Norris*, 2 Wall. 452.

Even if not void under § 3477, the contract was, at least as to part of the services rendered, against the public policy of the United States, and no recovery should be permitted. See cases *supra* and *Barry* v. *Capen*, 151 Massachusetts, 99; *McMullen* v. *Hoffman*, 174 U. S. 653. The evidence shows that the principal services rendered were personal solicitations of members of both houses of Congress, for which no compensation should be allowed. *Peck* v. *Henrich*, 6 App. D. C. 273, 284; *S. C.* 167 U. S. 624; *Alexander* v. *Van Wyck*, 4 App. D. C. 294.

*Mr. Frederic D. McKenney*, with whom *Mr. T. C. Catchings*, *Mr. O. W. Catchings* and *Mr. John Spalding Flannery* were on the brief, for defendant in error:

The writ of error should be dismissed as there is no Federal question. *Masterton* v. *Herndon*, 10 Wall. 416; *Meagher* v. *Manufacturing Co.*, 145 U. S. 608; *Freibelman* v. *Packard*, 108 U. S. 14; *Estis* v. *Trabue*, 128 U. S. 225; *Mason* v. *United States*, 136 U. S. 581; *Hardee* v. *Wilson*, 146 U. S. 179. No Federal statute or treaty was drawn in question or any immunity claimed thereunder by defendant in error. *Oxley Stove Co.* v. *Butler County*, 166 U. S. 648, 655; *Mining Co.* v. *Turck*, 150 U. S. 138; *Borgmeyer* v. *Idler*, 159 U. S. 408.

The contract was legal on its face and was not made illegal even if in its execution something, such as lobbying, had been done by defendant in error. *Barry* v. *Capen*, 151 Massachusetts, 99; *Jernegan* v. *Jordan*, 155 Massachusetts, 207.

No statute of the United States entitled plaintiff in error to avail of defendant in error's services without compensation,

and the state court having rendered the judgment this court cannot interfere. *Walworth* v. *Kneeland*, 15 How. 348, and see *Leyson* v. *Davidson*, 170 U. S. 36; *Bailey* v. *United States*, 109 U. S. 432; *Freedmen's Co.* v. *Shepherd*, 127 U. S. 495; *Price* v. *Forrest*, 173 U. S. 410, 419. Even if the provisions for lien are bad under the statute, that does not affect the rest of the contract. *Gelpcke* v. *Dubuque*, 1 Wall. 222. And if there is any doubt as to the legality of the statute it must be resolved in favor of the legality. *Hobbs* v. *McLean*, 117 U. S. 576.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

The first question is one of the jurisdiction of this court. The present plaintiffs in error based their defense in part upon section 3477 of the Revised Statutes,[1] which declares absolutely null and void certain transfers and assignments of claims against the United States. They insisted that the contract sued on was in violation of that statute; and that they and the estate of Nutt were protected by its provisions against any judgment whatever in favor of the plaintiff. In every substantial sense, therefore, they asserted a right and immunity under a statute of the United States, and such right and immunity was denied to them by the Supreme Court of Mississippi. That court ex-

---

[1] " SEC. 3477. All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

pressly adjudged that the contract was not, on its face, in violation of the statutes of the United States, and could legally be the basis of a valid claim against the Nutt estate. The case, so far as our jurisdiction is concerned, is therefore within section 709 of the Revised Statutes, which authorizes this court to reëxamine the final judgment of the highest court of a State, "where any title, right, privilege or immunity" is claimed under a statute of the United States, and the decision is against such title, right, privilege or immunity specially set up or claimed. A party who insists that a judgment cannot be rendered against him consistently with the statutes of the United States may be fairly held, within the meaning of section 709, to assert a right and immunity under such statutes, although the statutes may not give the party himself a personal or affirmative right that could be enforced by direct suit against his adversary. Such has been the view taken in many cases where the authority of this court to review the final judgment of the state courts was involved. *Logan County Nat. Bank* v. *Townsend,* 139 U. S. 67, 72; *Railroads* v. *Richmond,* 15 Wall. 3; *Swope* v. *Leffingwell,* 105 U. S. 3; *Anderson* v. *Carkins,* 135 U. S. 483, 486; *McNulta* v. *Lochridge,* 141 U. S. 327; *Metropolitan Bank* v. *Claggett,* 141 U. S. 520; *McCormick* v. *Market Bank,* 165 U. S. 538, 546; *California Bank* v. *Kennedy,* 167 U. S. 362. We perceive no sufficient reason to modify the views expressed in those cases as to our jurisdiction. It is true there are some cases which, it is contended, justify a contrary view. We will not now stop to examine those cases narrowly and to declare wherein they may be in conflict with the cases above cited. Suffice it to say, that upon a careful reconsideration of the whole subject, and after reviewing all the cases bearing upon the precise question of jurisdiction now before us, we reaffirm the views expressed in the above-cited cases, as demanded by the statutes regulating the jurisdiction of this court.

We now come to the merits of the case as affected by section 3477 of the Revised Statutes. That section, as we have seen, declares null and void all transfers and assignments of a

claim upon the United States, or of any part or share thereof, or any interest therein, whether absolute or conditional, and whatever may be the consideration thereof, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, unless they are freely made and executed after the allowance of the claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. This statute has been the subject of examination in many cases. *Spofford* v. *Kirk*, 97 U. S. 484; *United States* v. *Gillis*, 95 U. S. 407; *Erwin* v. *United States*, 97 U. S. 392; *Goodman* v. *Niblack*, 102 U. S. 556; *Ball* v. *Halsell*, 161 U. S. 72; *Freedmen's Saving Co.* v. *Shepherd*, 127 U. S. 494; *Hobbs* v. *McLean*, 117 U. S. 567; *St. Paul & Duluth R. R.* v. *United States*, 112 U. S. 733; *Bailey* v. *United States*, 109 U. S. 432; *Price* v. *Forrest*, 173 U. S. 410.

If regard be had to the words as well as to the meaning of the statute, as declared in former cases, it would seem clear that the contract in question was, in some important particulars, null and void upon its face. We have in mind that clause making the payment of the attorney's compensation a *lien* upon the claim asserted against the Government and upon any draft, money or evidence of indebtedness issued thereon. In giving that lien from the outset, before the allowance of the claim and before any services had been rendered by the attorney, the contract, in effect, gave him an interest or share in the claim itself and in any evidence of indebtedness issued by the Government on account of it. In effect or by its operation it transferred or assigned to the attorney in advance of the allowance of the claim such an interest as would secure the payment of the fee stipulated to be paid. All this was contrary to the statute; for its obvious purpose, in part, was to forbid any one who was a stranger to the original transaction to come between the claimant and the Government, prior to the allowance of a claim, and who, in asserting his own interest or share in the claim, pending its examination, might embarrass the conduct of the business on the part of the officers of the Government. We are of opin-

ion that the state court erred in holding the contract, on its face, to be consistent with the statute.

It does not follow, however, that, for this error, the judgment must be reversed. There is a provision in the contract of 1882 which can stand alone and which was not in violation of the statute, namely, the one evidencing an agreement on the part of Nutt's executrix to pay to the attorney for his services a sum equal to $33\frac{1}{3}$ per cent of the amount allowed on the claim. *Wylie* v. *Cox*, 15 How. 415; *Wright* v. *Tebbitts*, 91 U. S. 252; *Taylor* v. *Bemiss*, 110 U. S. 42. Such an agreement did not give the attorney any interest or share in the claim itself nor any interest in the particular money paid over to the claimant by the Government. It only established an agreed basis for any settlement that might be made, after the allowance and payment of the claim, as to the attorney's compensation. It simply created a legal obligation upon the part of the estate, which, if not recognized after the collection of the money, could have been enforced by suit for the benefit of the attorney, without doing violence to the statute or to the public policy established by its provisions. The decree below may then be regarded as only giving effect to the agreement as to the basis upon which the attorney's compensation was to be calculated. It did not assume to give him any lien upon the claim or any priority in the distribution of the money received by Nutt's personal representative from the United States, nor upon any other money in his hands. Indeed, no lien is asserted by the plaintiff in his pleadings. While the original petition asserted his right to be paid in accordance with the contract, the plaintiff claimed, if he could not be paid under the contract, that he be compensated according to the reasonable value of his services.

Much was said in argument as to the nature of the services rendered by the plaintiff—the charge being that his services were of the kind called *lobby* services for which, consistently with public policy and public morals, no recovery could be had in any court. *Trist* v. *Child*, 21 Wall. 441; *McMullen* v. *Hoff-*

*man,* 174 U. S. 639. We have seen that the state court of original jurisdiction was of opinion the suit was for lobbying services, and on that ground denied all relief. But the Supreme Court of Mississippi held that the record did not establish such a case, and we accept that view of the evidence in the cause.

Finding in the record no error of law as to any question which may be properly reviewed by this court, the judgment of the state court is

*Affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE WHITE concur in the result.