TAYLOR *v.* WHARTON.*

ATTORNEY AND CLIENT; EQUITABLE LIEN; APPEAL AND ERROR.

1. A contract whereby a client agrees to pay his attorney a retaining fee and a "further fee of 15 per cent upon the amount recovered" does not amount to an appropriation of the fund by the client to the extent of the percentage specified, so as to give the attorney an equitable lien upon the fund when recovered, but merely establishes the amount which the attorney is entitled to receive from the client upon the settlement of the claim. (Following *Thurston* v. *Bullowa*, 42 App. D. C. 18.) ·

2. Where this court, under a misapprehension of the lower court's ruling, granted a special appeal, and thereafter reversed the decree appealed from, and it was shown on a motion by the appellee for a rehearing that the decision of the lower court was in effect in harmony with the decision of this court, the appeal was dismissed.

No. 2734. Submitted November 2, 1914. Decided February 1, 1915.

*Attorney—Lien—Percentage of Recovery.*—As to the right of attorney who takes case on contingent fee or for certain percentage to implied or equitable lien on fund recovered, see note to *De Winter* v. *Thomas*, 27 L.R.A. (N.S.) 634.

HEARING on an appeal (specially allowed) from an order of the Supreme Court of the District of Columbia overruling a motion to dismiss a bill in equity to establish an equitable lien against a certain fund in the hands of an administrator.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is a special appeal from an order in the supreme court of the District, overruling a motion to dismiss appellees' bill.

The facts set forth in the bill material to the disposition of this appeal are as follows: Stanhope Prevost, a citizen of the United States and a resident of Lima, Peru, died at the latter place between 1868 and 1870. For many years prior to his death he had been a partner in the commercial firm of Alsop & Company, doing business in Chile. Following the death of Prevost his estate, represented by his son and executor, Henry S. Prevost, now deceased, retained an interest in said firm. In the year 1885, when Alsop & Company had been in liquidation for a number of years, there still remained outstanding a large claim against the governments of Bolivia and Chile. In this claim the estate of Stanhope Prevost had a substantial interest. The management of the claim had for many years been intrusted to John Wheelwright, now deceased, who was the recognized representative of the partners of Alsop & Company. In this work he was assisted by Henry S. Prevost, the then executor of Stanhope Prevost. Wheelwright, acting with the full knowledge and approval of Henry S. Prevost, entered into a contract with George S. Boutwell, of whose estate appellee William F. Wharton is the administrator, to take professional charge of said claim on behalf of the interested parties. The terms of this employment were arranged through correspondence. In a letter dated April 1, 1885, Mr. Boutwell stated that he would be willing to undertake the prosecution of the case upon the following terms: *A retainer of $1,000,* current funds of the United States. If a recovery should be had by arbitration in the United States *"a further fee of 15 per cent upon the amount*

*recovered,"* and if the claim should be referred to arbitrators
and their session should be held in some other country than
the United States, *"a fee of 10 per cent of the amount recov-
ered,"* the expense of printing documents to be met by Mr.
Wheelwright. On June 15th, following, Mr. Wheelwright, in
a letter to Mr. Boutwell, referred to the "terms upon which
you are disposed to act for me in the matter of my claims as
liquidator of the firm of Alsop & Company against the govern-
ments of Chile and Bolivia." The letter proceeds: "Thus, at
the outset, I indicate that, with certain amplification your pro-
posals are agreeable to me.   *   *   *   You will act for me in
accordance with the terms of the before mentioned power and
of this letter as my attorney representative legal adviser and
advocate in the special matter in hand and will use your best
endeavors in these capacities to obtain a settlement of the claims
I have by virtue of my agreements with the Bolivian govern-
ment.   *   *   *   As remuneration for your services under the
said power of attorney and this letter of agreement *I will pay
you an immediately retaining fee of $1,000,* United States
currency and *I will also pay you a commission* of 15 per cent
on all sums which you may recover for me or the said firm, by
any of the means I have specified above," etc. It is then stated
that if the claims should be referred to a court of arbitration
or other tribunal sitting in any other country than the United
States, Mr. Boutwell would not be called upon to attend such
court or tribunal, and in such case "instead of the before men-
tioned commission of 15 per cent *I will pay you* a less commis-
sion namely that of 10 per cent on all sums which may be
awarded by such last mentioned court or tribunal. This com-
mission of 10 per cent will be in addition to the above mentioned
retaining fee." The letter further states that "over and above
the retaining fee and alternative commissions before mentioned"
the expense of printing documents, as also any court or govern-
ment fees and like expenses, would be borne by Mr. Wheel-
wright, but that "the said retaining fee of $1,000 and the said
respective commissions are to cover all professional charges
and personal expenses incidental to discharge of your duties

as my attorney," etc.   Mr. Boutwell was required, in the closing paragraph of the letter, to indorse a memorandum of his acceptance on another copy thereof, whereupon he would be paid the retaining fee.

The bill avers that "the said Boutwell and the said Prentiss (of whose last will appellee Alice Prentiss is executrix) in the year 1901 entered into an agreement respecting the division to be made of the said commission of fifteen per cent (15%) to be paid under the aforesaid agreement between the said Boutwell and the said Wheelwright; " that this agreement was ratified and approved by said Henry S. Prevost "as the representative of the Alsop claimants, including the estate of Stanhope Prevost, deceased, of which he was the then executor." The ratification agreement, a copy of which is attached to the bill, refers to the agreement between Boutwell and Wheelwright; that under it Boutwell had engaged in the prosecution of the claim; that Prentiss had for several years co-operated with Boutwell in such prosecution; that Boutwell and Prentiss had entered into an agreement by which they were to prosecute the claim jointly and upon the further agreement that, in case of the death or incapacity of either, the other was to continue the prosecution of the claim; that in consideration of the premises "I, Henry S. Prevost, liquidateur of the firm and estate of the said Alsop and Company, in succession to John Wheelwright, now deceased, do ratify and confirm the agreement so made between the said Boutwell and the said Prentiss, and accept the services of the said Boutwell and Prentiss, or the survivor of them, or their, or either of their, representatives, agents, or appointees as a continuance and a performance in full of the agreement entered into by the said Boutwell and the said John Wheelwright, as former liquidateur of the firm of Alsop & Company."

It is further averred that Mr. Boutwell died in 1905 and that Mr. Prentiss continued in charge of the claim; that it was finally referred to His Britannic Majesty, George V., and that as a result of that reference an award in favor of the claimants of $906,666.78 was made, and that of this award the estate

of Stanhope Prevost was allotted $84,430.43, which sum, less certain payments authorized by the representative of said estate, was paid to the appellant as administrator; that the estates of Boutwell and Prentiss thereupon became entitled "to be paid a commission equal to fifteen per cent (15%)," amounting to $12,664.56, and that the appellees, *"by virtue of the contracts and agreements set forth"* in the bill, have a lien upon the funds in the hands of the defendant.

*Mr. Daniel W. Baker* and *Mr. Hannis Taylor* for appellant.

*Mr. Robert A. Young, Mr. Harold J. Wagner, Mr. F. DeC. Faust,* and *Mr. C. F. Wilson* for appellee.

Mr. Justice Robb delivered the opinion of the Court:

In *Wright* v. *Ellison,* 1 Wall. 16, 17 L. ed. 555, the court said: "It is indispensable to a lien thus created that there should be a distinct appropriation of the fund by the debtor, and an agreement that the creditor should be paid out of it." In *Wylie* v. *Coxe,* 15 How. 415, 14 L. ed. 753, the court found "that the complainant was to receive a contingent fee of 5 per centum *out of* the fund awarded;" that "this being the contract, it constituted a lien upon the fund, whether it should be money or scrip. The fund was looked to, and not the personal responsibility of the owner of the claim." In *Ingersoll* v. *Coram,* 211 U. S. 335, 53 L. ed. 208, 29 Sup. Ct. Rep. 92, there was an agreement that Ingersoll should receive a certain amount "out of the fund secured from the estate," and the court found that this indicated an intention to make that fund a security for the services to be rendered and created an equitable lien on the fund. In the case of *Barnes* v. *Alexander,* 232 U. S. 117, 58 L. ed. 530, 34 Sup. Ct. Rep. 276, it appeared that Alexander, who was an attorney, was to receive one third of the fund involved as compensation for his services, and that he looked

only to this fund. It was held that this contract, being definitely limited to payment out of the fund, created a lien upon that fund. But the facts in these cases, it will be seen, are quite different from the facts in the case before us. Here there was no appropriation of the fund and no agreement that Mr. Boutwell should be paid out of it. Under the agreement between Wheelwright and Boutwell the latter was to receive, and did receive, a retaining fee of $1,000. In addition to that amount Wheelwright was to pay him a certain commission on all sums recovered. This commission was to be "in addition to the above mentioned retaining fee." The amount recovered, therefore, was simply to afford the basis upon which to compute the fee— nothing more. The agreement did not attempt to give, nor did it give, Mr. Boutwell any interest or share in the claim itself, nor any interest in the fund to be recovered. *Nutt* v. *Knut,* 200 U. S. 12, 50 L. ed. 348, 26 Sup. Ct. Rep. 216; *Thurston* v. *Bullowa,* 42 App. D. C. 18. In the former case, the contract was to pay an attorney for his services a sum equal to $33\frac{1}{3}$ per cent of the amount allowed on the claim. "Such an agreement," said the court, "did not give the attorney any interest or share in the claim itself nor any interest in the particular money paid over to the claimant by the government. It only established an agreed basis for any settlement that might be made, after the allowance and payment of the claim, as to the attorney's compensation."

There is nothing in the ratification by Henry S. Prevost of the agreement between Boutwell and Prentiss that in any way changes the terms of the original contract as to compensation. It simply recognizes Prentiss as jointly interested with Boutwell therein, and accepts the services of the two or the survivor of them or their representatives, etc., "as a continuance and a performance in full" of said original agreement.

The question whether an attorney's charging lien may be asserted against the fund in the hands of appellant is not here involved and necessarily is not determined.

Decree reversed, with costs, and cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

A petition for a rehearing was granted, Mr. Justice ROBB delivering the opinion of the Court:

A petition for rehearing has been filed by the appellees in this case. Appellant's application for special appeal was allowed by this court because we understood that the court below had ruled that appellees had a lien upon the funds in question by virtue of the contracts set forth in our opinion. That understanding was strengthened by the briefs thereafter filed and the presentation of the case at bar. We therefore reversed the decree, and, inasmuch as there was a prayer in appellees' original bill to the effect that if they were not entitled to compensation under said contracts they were entitled to reasonable compensation for services rendered, upon the theory that they had created the fund in question, remanded the case for further proceedings. It is now made to appear by the application for rehearing that the court below ruled that no lien existed by reason of said contracts. In other words, the trial court's decision upon this point was in harmony with our own, and therefore should have been affirmed, and not reversed.

The petition for rehearing will be granted, but inasmuch as we would not have allowed the special appeal had we understood the real status of the case, without further argument we will dismiss that appeal with costs.