# CAPITAL TRUST COMPANY, ADMINISTRATOR OF ARNOLD, *v.* CALHOUN.

## ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 368.   Argued May 2, 1919.—Decided June 2, 1919.

For the prosecution of a claim for taking and use of private property in the Civil War, claimant agreed to pay an attorney's fee of 50% of the amount to be collected, to be a lien on any warrant to be issued in payment of the claim; the bill was referred by the Senate under § 14 of the Act of March 3, 1887, c. 359, 24 Stat. 505, now Jud. Code, § 151, to the Court of Claims, where, after evidence and trial, favorable findings were secured, upon which Congress appropriated an amount in payment, but with the restriction that no part thereof in excess of 20% should be paid to or received by any attorney on account of services rendered in connection with the claim, the act further declaring it a misdemeanor for any attorney to exact or receive for such services any sum exceeding that percentage of the amount appropriated, any contract to the contrary notwithstanding.

Assuming the provision for a lien not violative of Rev. Stats., § 3477, and the contract valid when made, *held*, that while the attorney's right to collect his fee from other assets of the client was not affected, the restriction, as to the fund appropriated, was within the power of Congress, and did not deprive him of property or of liberty of contract without due process, although subsequent to the making of the contract and rendition of the services.  P. 217.

177 Kentucky, 518, reversed.

THE case is stated in the opinion.

*Mr. T. L. Edelen* for plaintiff in error.

*Mr. Joseph W. Bailey* and *Mr. Charles F. Consaul* for defendant in error:

It is maintained by defendant in error that the provisions of § 4, of the Act of March 4, 1915, denying his right to collect from his former client the full compensation due under a valid contract, for his professional services rendered prior to the enactment, and making him liable to punishment for a misdemeanor in event he either compels or accepts compliance with the terms of such valid contract, are in direct derogation of his rights under the Fifth Amendment, in that the statute attempts to deprive defendant in error of his property and liberty without due process of law.

Defendant in error does not contend that, by reason of his services rendered under his contract, he acquired any right of property as against the United States.  The property right so acquired is against the Arnold estate. The claim having been investigated and tried in the Court of Claims, and an appropriation having been made by Congress for payment of the sum awarded, and payment having actually been made, the amount appropriated (less the 20 per cent. received,) now in the hands of the administrator of the Arnold estate, is chargeable with payment of the residue of the agreed fee.

This right of property was acquired and held under and by virtue of professional services rendered, in accordance with a valid contract, having express statutory sanction, in no manner opposed to public policy, and was acquired prior to the enactment in question. At least from date of allowance of the claim by the Court of Claims, Calhoun had a chose in action, as against his client, under his valid contract whereunder he had completed his services. That a right of property is thus acquired by counsel has been recognized by the courts. *McGowan* v. *Parish*, 237 U. S. 285.

The instant the act was approved by the President, every individual claimant therein named became the owner of the sum appropriated to him. He could, on refusal by the Treasury officials to pay his claim, secure a mandamus compelling payment. *United States ex rel. Parish* v. *MacVeagh*, 214 U. S. 124; *Osborn* v. *Nicholson*, 13 Wall. 654.

Decisions opposed to our position herein (*Ralston* v. *Dunaway*, 123 Arkansas, 12; *Calhoun* v. *Massie*, 123 Virginia, 673) holding that counsel could acquire by their performance of services under valid contracts, no rights whereof they might not be divested by act of Congress at any time prior to actual payment of the claim, overlook the legal principle that the fee contract constituted a chose in action, and further, that a chose in action is property, regardless of whether or not there exists a present right to sue thereon. It is within the bounds of reason to say that the rights of Calhoun became vested as soon as he accepted the employment and began rendering his services. *Price* v. *Haeberle*, 25 Mo. App. 201.

It is plain that the right becomes a vested property right at least on the securing of a favorable report or allowance of the claim at the hands of the Court of Claims. *Roberts* v. *Consaul*, 24 App. D. C. 551, 559; *Schooner Zilpha*, 40 Ct. Clms. 200.

The uncertainty as to time of payment, or even the possible uncertainty as to whether Congress may appropriate for the entire amount reported, does not affect the character of this vested or property right, although it may affect its extent or value. As the claim itself constituted property, which admittedly goes to the administrator, *Erwin* v. *United States*, 97 U. S. 392, the rights of Calhoun to his compensation must likewise be property, like an estate in contingent remainder, or the interest of an assured under a policy of life insurance.

If Calhoun had died prior to payment of the claim, his property right would have passed as such to his administrator or executor, and could have been enforced. *McGowan* v. *Parish, supra.*

Legislation impairing property rights in contracts violates the Fifth Amendment.

In a certain sense it may be said that the statute here involved does not directly impair the liberty of making a contract, but it does in terms operate to deprive defendant in error of his liberty of either enforcing compliance by his client with the terms of a valid contract, or even of accepting from an honest client the agreed compensation in excess of a sum equal to 20% of the sum collected upon a claim.

With reference to what the court said in *Ex parte Garland,* 4 Wall. 333, it may be pertinently asked of what value is the right to appear in court and argue causes for suitors, if, after the attorney has performed these functions of his profession, he can be deprived by act of Congress of the fruits of his labors?

The limitation of attorney fees in pension cases was purely prospective in its operation. The theory of the court in *Frisbie* v. *United States,* 157 U. S. 160, was that, in granting or extending a privilege, Congress may simultaneously lay certain conditions upon persons, either claimants or counsel, availing themselves of such privi-

lege or extension. It by no means follows, however, that Congress may impose such conditions upon counsel, after services have been fully rendered, under valid contracts, and make such conditions practically retroactive in a manner to deprive counsel of their property rights, acquired under their contracts, and enforceable against their clients.

The limitation of counsel fees in Indian depredation claims was sustained, in *Ball* v. *Halsell*, 161 U. S. 72, as being a condition laid by Congress on the right to sue. That act did not, like the one here, seek to enact such limitation after the suit had been conducted to a termination in the Court of Claims.

In the following cases the present fee limitation has been adjudged unconstitutional and void: *Moyers* v. *Memphis*, 135 Tennessee, 263; *Black* v. *O'Hara, Admr.*, 175 Kentucky, 623; *Lay* v. *Lay*, 118 Mississippi, 549; *Newman* v. *Moyers*, 47 App. D. C. 102; *King* v. *Pons, Admr.*, 77 Florida,——. In two cases, it was sustained: *Ralston* v. *Dunaway*, 123 Arkansas, 12; *Calhoun* v. *Massie*, 123 Virginia, 673. Obviously, Congress has the power (as distinguished from the right) to decline to *appropriate* money for any purpose.

MR. JUSTICE McKENNA delivered the opinion of the court.

Proceeding in equity under the law of Kentucky for an accounting from the Capital Trust Company as administrator *de bonis non* of the estate of Thomas N. Arnold, deceased, and that the estate be settled and distributed.

Defendant in error Calhoun and Calhoun & Sizer, a firm composed of C. C. Calhoun and Adrian Sizer, attorneys at law, appeared in the proceeding and by cross-petition prayed judgment against the trust company as such administrator for the sum of $1504.50, with interest from July 10, 1915.

An outline of the facts is as follows: Thomas N. Arnold, prior to his death, believing that he had a just claim against the United States, entered into a contract with the firm of Calhoun & Sizer and employed it to undertake the prosecution of the claim, and on August 1, 1905, entered into a written contract with it by which, in consideration of the services rendered and to be rendered by it in the prosecution of the claim, he agreed to pay it a fee equal in amount to 50% of whatever sum of money should be awarded or collected on the claim, the payment of which was made a lien upon the claim or upon any draft or evidence of payment that might be issued in liquidation thereof.

The firm undertook the prosecution of the claim and bills were introduced in Congress for its payment, and on May 22, 1908, it was referred to the Court of Claims by a resolution of the United States Senate for findings of fact under § 14 of the Act of March 3, 1887, c. 359, 24 Stat. 505, now § 151 of the Judicial Code. About that time the firm of Calhoun & Sizer was dissolved and subsequently Arnold died and the beneficiaries of the estate entered into a written contract with defendant in error, C. C. Calhoun, to continue the prosecution of the claim and agreed to pay him 50% of the amount which might be collected, the fee to be a lien "on any warrant" which might "be issued in payment of said claim."

January 15, 1912, the Court of Claims made findings of fact in the matter of the claim and stated the amount thereof as $5015.00. The court's findings were certified to Congress and that body, by an Act approved March 4, 1915, c. 140, 38 Stat. 962, made an appropriation for the payment of the claim and the Secretary of the Treasury was directed to pay it.

The act, however, contained the following provisions:

"That no part of the amount of any item appropriated in this bill in excess of twenty per centum thereof shall be

paid or delivered to or received by any agent or agents, attorney or attorneys on account of services rendered or advances made in connection with said claim.

"It shall be unlawful for any agent or agents, attorney or attorneys to exact, collect, withhold or receive any sum which in the aggregate exceeds twenty per centum of the amount of any item appropriated in this bill on account of services rendered or advances made in connection with said claim, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $1000."

June 7, 1915, Calhoun requested the Secretary of the Treasury to issue a warrant to him for the sum of $1003, which he recited was to be payable to him on account of services as attorney in the claim of the Capital Trust Company against the United States, as appropriated for by the act of Congress, the receipt of said warrant to be taken and accepted as a full and final release and discharge of any claim he had against the United States on account of services in said claim.

Afterward, on July 1, 1915, notice was given to Calhoun, as attorney for the claimant, that in settlement of the claim a check was mailed him for $1003, being 20% of the claim, and to the trust company as administrator *de bonis non* of Arnold, check for $4012. A part of this money is still in the hands of such administrator and there is no other property belonging to the estate.

The cross petition additionally asserts the following: No part of the fee except the sum of $1003 has been paid and there is a balance due of $1504.50, with interest from July, 1915, the date the money was received by the trust company.

July 10, 1915, Calhoun presented his claim to the administrator duly proved and demanded payment, but payment was refused. The whole of the $1504.50, there-

fore, remains unpaid, and Calhoun has a lien upon the fund for the payment, he having accepted the check for $1003 under protest and only on account. The contract preceded the act of Congress and when the act was passed such contracts were lawful and Congress was without authority to take from him his property without due process of law or just compensation therefor or to deprive him of his liberty of contract.

This is repeated and emphasized in various ways and the Fifth Amendment is especially invoked as sustaining it, and for which reasons it is alleged that the "attempted limitation of attorney's fees by said act" was "null and void."

A demurrer to the cross petition was overruled and the trust company answered. A detail of its averments is not necessary. It practically admits those of the cross-petition and pleads in defense the provisions of the act of Congress, and also § 3477, Rev. Stats.

A demurrer was sustained to the answer and judgment rendered for Calhoun for the sum of $1504.50, with interest from July 1, 1915. The judgment was affirmed by the Court of Appeals. The court said: "This case runs on all fours with *Black* v. *O'Hara's Admr.*, 175 Ky. 623, where it was held that the Act of Congress approved March 4, 1915, appropriating money for the payment of similar claims and containing a similar provision limiting an attorney's fee to twenty per cent. of the amount recovered, in so far as it attempted to limit the amount of a fee theretofore earned, was unconstitutional and invalid.

"We have been urged to recede from the rule announced in *Black* v. *O'Hara's Admr.*, *supra*, as being unsound in principle; but after a careful reconsideration of the reasoning by which the decision in that case is supported, we are satisfied of its soundness, and reaffirm it."

We encounter at the outset a question upon the form

of the judgment. The cross-petition was presented in a proceeding to require an accounting of the administrator of Arnold and the petition asserted a claim and lien upon the money in the administrator's hands received from the United States Government. The judgment, however, does not refer to that money or the lien upon it; it provides only that Calhoun recover of the administrator "the sum of fifteen hundred and four 50/100 dollars with interest from July 1st, 1915, and his costs herein and may have execution," etc.

If the judgment only establishes a claim against the administrator to be satisfied, not out of the moneys received from the United States but from other assets of the estate, a situation is presented which it was said in *Nutt* v. *Knut*, 200 U. S. 12, 21, would not encounter legal objection. In other words, the limitation in the act appropriating the money to 20% as the amount to be paid to an agent or attorney would have no application or be involved.

But the judgment is construed by the parties as having more specific operation, construed as subjecting the money received from the Government to the payment of the balance of Calhoun's fee, doubtless because the estate has no other property. On that account it is attacked by the trust company and defended by Calhoun. The controversy thus presented is discussed by counsel in two propositions: (1) The validity of the contract independently of the limitation imposed by Congress upon the appropriated money; (2) the power of Congress to impose the limitation as to that money. The latter we regard as the main and determining proposition; the other may be conceded, certainly so far as fixing the amount of compensation for Calhoun's services (we say Calhoun's services as the appearance of the firm of Calhoun & Sizer was withdrawn), and even so far as the contract provided for a lien, if the distinction made by counsel be tenable—that

is, a distinction between a lien on the claim and a lien "upon any draft, money, or other evidence of payment," to quote from the first agreement, or "on any warrant which may be issued in payment," to quote from the second agreement.

So far as the contract fixed the amount of fee it is within the rule of *Nutt* v. *Knut, supra,* and, for the sake of the argument, the lien may be conceded to be valid against § 3477, Rev. Stats., to the contrary if it be regarded as having been given not upon the claim but upon its evidence, as counsel contend. It may, therefore, not only escape the defect that was held fatal to the lien asserted in *Nutt* v. *Knut,* but may claim the support of *McGowan* v. *Parish,* 237 U. S. 285.

We, however, need not dwell upon the distinctions (their soundness may be disputed) nor upon the contentions based upon them, because, as we have said, we consider the other proposition, that is, the power of Congress over the appropriated money and the limitation of payment out of it to an agent or attorney to 20% of the claim, to be the decisive one.

In its discussion counsel for Calhoun have gone far afield and have invoked many propositions of broad generality—have even adduced as impliedly against the power, if we understand counsel, the constitution of the Court of Claims and its jurisdiction as weight in the same direction.

We can only instance some of the points of the argument. The Act of February 26, 1853, c. 80, 10 Stat. 161, now § 823, Rev. Stats., is cited as recognizing the right of attorneys to compensation for their services in claims against the United States, and it is said that contracts for such compensation have been universally sanctioned as legal. And, further, official statements are adduced to the effect that the Court of Claims is so constituted "that the successful prosecution of a claim" in it "is something more than a merely perfunctory performance on part of

counsel"; it is "a matter of great business hazard and risk to counsel when done upon purely contingent fees." And in many cases, it is further urged, no other than contingent fees are possible and to deny them is practically to deny the right to counsel. Mr. Justice Miller is quoted from, in *Taylor* v. *Bemiss*, 110 U. S. 42, in illustration of such result and its injury.

The right to counsel being thus recognized, and recognized antecedently to the contract now involved, it became, counsel contend, a "pre-existing valid right," and to take it away is to divest the right—to take it away is to deprive of property of value assured of protection by the Constitution of the United States. To sustain the contentions a number of state cases are cited. Among them is *Black* v. *O'Hara, Admr.*, 175 Kentucky, 623, the case which the Court of Appeals regarded as authority for its ruling in the present case.

In a general sense there is force and much appeal in the contentions, but we think they carry us into considerations beyond our cognizance. Liberty in any of its exertions and its protection by the Constitution are of concern. The right to bind by contract and require performance of the contract are examples of that liberty and that protection and they might have resistless force against any interfering or impairing legislation if the contest in the case was simply one between Calhoun and the Arnold estate. But there are other elements to be considered— there is the element of the condition Congress imposed on the subject-matter of the controversy regarded as a condition of its grant. Relief could only be had through legislation. This was petitioned and the Senate of the United States was prompted to refer the claim to the Court of Claims. A defect of remedy remained even after the court had been thus invoked and had reported the amount and facts of the claim. Further legislation was necessary, but it could not have been compelled; it

was optional, not compulsory; and it would seem to re-quire no argument to convince that the terms of its enact-ment must be taken as expressed and the relief it granted accepted with the condition imposed upon it. Indeed, the proposition is confused by its discussion. And it is certainly difficult to deal with the distinction that counsel make between preëxisting and prospective transactions. The right is absolute and universal and necessarily must be to have any strength at all. It is only arbitrary in the sense that many of the faculties of government are. And we have seen there was exertion of one of its powers in the present case—not, however, to interfere with or lessen the asserted obligation of the contract between Arnold and Calhoun, but to limit only the application of the money gratuitously appropriated in the payment of at-torneys' fees. The contention is that this cannot be done, or, to put it another way, that the appropriation, though it could not be compelled, was yet subservient to the con-tract of Calhoun (and, we may interject, if for 50%, for any per cent. or terms) and that he was entitled to all the contract provided, denuded of the condition imposed upon the appropriation.

The contention has no legal basis, and it may be said it has no equitable one. Neither the justice nor the policy of what sovereignty may do or omit to do can be judged from partial views or particular instances. It is easy to conceive what difficulties beset and what circumstances had to be considered in legislating upon such claims. Defi-nite dispositions were matters of reflection and, it may be, experience—imposition was to be protected against as well as just claims provided for, and, considering claimants and their attorneys in the circumstances, it may have seemed to Congress that the limitation imposed was fully justified, that 20% of the amounts appropriated would be a proper adjustment between them. We are not concerned, however, to accuse or defend. Whatever might have been

the moving considerations, the power exercised must be sustained. *Frisbie* v. *United States*, 157 U. S. 160; *Ball* v. *Halsell*, 161 U. S. 72.

The first case dealt with conditions upon pension legislation; the second concerned a claim against the United States on account of Indian depredations. It is, therefore, contended that they are unlike Calhoun's contract with Arnold and that their principle is not applicable. We think otherwise. The legislation passed on was sustained as within the power of government.

We conclude, therefore, that Calhoun's claim for a balance due as fees cannot be paid out of the moneys appropriated by Congress and now in the hands of the administrator *de bonis non*, or recognized as having any validity as against that fund. Beyond this we need not go.

*Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE HOLMES concurs in the result.
MR. JUSTICE McREYNOLDS took no part in the decision.