# United States Court of Appeals for the Federal Circuit

2008-5010

DELMARVA POWER & LIGHT COMPANY
and ATLANTIC CITY ELECTRIC COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

PSEG NUCLEAR, LLC and PUBLIC SERVICE
ELECTRIC AND GAS CO.,

Defendants-Appellees.

Frederick M. Lowther, Dickstein Shapiro LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Richard J. Conway, Bradley D. Wine, and Joseph R. Berger.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Alan J. Lo Re, Senior Trial Counsel, and Joshua E. Gardner, Trial Attorney. Of counsel was Jane K. Taylor, Attorney, United States Department of Energy, of Washington, DC.

Alex D. Tomaszczuk, Pillsbury Winthrop Shaw Pittman LLP, of McLean, Virginia, argued for defendants-appellees PSEG Nuclear, LLC, et al. With him on the brief were Daniel S. Herzfeld, and Jay E. Silberg, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2008-5010

DELMARVA POWER & LIGHT COMPANY and ATLANTIC CITY ELECTRIC COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

PSEG NUCLEAR, LLC and PUBLIC SERVICE ELECTRIC AND GAS CO.,

Defendant-Appellees.

Appeal from the United States Court of Federal Claims in Cases No. 04-0034C and 04-0036C, Judge Christine O.C. Miller.

_____

DECIDED: September 18, 2008
_____

Before LINN, FRIEDMAN, and PROST, Circuit Judges.

FRIEDMAN, Circuit Judge.

The question in this appeal, which this court has not previously decided, is whether the United States may, in a particular case, waive the prohibition in the Anti-Assignment Act, 31 U.S.C. § 3727 (2000), against the assignment of claims against the

United States and thereby validate an assignment that that Act otherwise would prohibit. The Court of Federal Claims upheld the government's authority to do so, and we affirm.

I

A. This case arises out of the federal government's program, thus far unsuccessful, to remove and dispose of spent nuclear waste resulting from the operation of this country's nuclear electric generating facilities. The program is described in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1337-39 (Fed. Cir. 2000). In brief, in 1983 the Department of Energy, pursuant to a statutory directive, entered into standard contracts with the country's nuclear electric generating companies, under which (1) the government agreed to begin accepting and disposing of spent nuclear waste by January 1, 1998 and (2) the utilities agreed to pay the government substantial amounts for its service, including both a one-time fee based on past nuclear generation of electricity and on-going fees.

The government was unable to inaugurate its waste disposal program and the utilities filed suits challenging that default. In Maine Yankee, this court held that the government had breached the standard contract by failure to commence the waste disposal program by the specified date and that the utilities could maintain breach-of-contract damage suits against the government for that default.

B. The appellees PSEG Nuclear and Public Service Electric and Gas Co. (collectively "PSEG") own and operate nuclear facilities. The appellants Delmarva Power & Light Co. ("Delmarva") and Atlantic City Electric Co. ("Atlantic City") (collectively "the Assignors") are electric utilities that owned minority undivided interests in those nuclear plants. In September 1999, the Assignors by written contracts (the

"Transfer Agreements") agreed to transfer to PSEG, in return for approximately $30 million, their interests in those nuclear plants. In the Transfer Agreements the Assignors also transferred to PSEG "[a]ll claims of Seller relating to or pertaining to the Department of Energy's defaults . . . including all claims for failure by the Department of Energy to take Spent Nuclear Fuel . . . ."

In January 2004, Delmarva and Atlantic City each filed a complaint in the Court of Federal Claims seeking damages from the United States for the Department of Energy's breach of its contracts to begin removal of the waste from PSEG's nuclear plants in which each had a minority interest. Although the original complaints alleged various theories of liability, in this appeal they rely only on their claim that the government's breach of contract constituted a taking of their former property interests in the nuclear plants, for which they are entitled to just compensation. The takings theory is that the government's breach of the removal contracts diminished the value of the nuclear plants, and as a result, they received less on the sale of their interest in those plants. The two cases have been consolidated.

When PSEG became aware of the claims the Assignors had asserted in this lawsuit, it invoked the arbitration clause of the Transfer Agreements to argue that the claims the Assignors had assigned in the Transfer Agreements included the taking claims. In proceedings to which the government was not a party, the arbitrators sustained PSEG's contention. The Assignors challenged the arbitration decision in a New Jersey state court, which upheld the award.

The Assignors moved the Court of Federal Claims to vacate the arbitration award. The court then stated that the government should indicate whether it waived its

rights under the Assignment-of-Claims Act. In response, the government filed a document which included the following statement:

> [T]he Government is exercising its sole discretion to accept the assignments of those claims that the plaintiffs purported to make to PSEG Nuclear, to the extent that we have been made aware of those claims through the plaintiffs' complaint in this action and through the assignment provisions in the purchase and sale agreements that have been included in the appendices to some of the briefing in this case.

The Court of Federal Claims granted summary judgment for the government and dismissed the case. The court held that the government properly waived its right, under the Assignment of Claims Act, to invalidate the assignments; that the assignments included the takings claims; and that having assigned those claims to PSEG, the Assignors had no basis for asserting those claims in this case.

II

A. The language of the assignment clause of the Transfer Agreements on its face covers the takings claims, and the Assignors apparently do not contend otherwise. The Transfer Agreements included among the "Purchased Assets":

> All claims of Seller relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets, other than the claims described in Section 2.2(1) . . . .

This provision was followed by 13 separate "Excluded Assets" that were "hereby specifically excluded from the definition of Purchased Assets."

The takings claims were "claims . . . relating to or pertaining to the Department of Energy's defaults under the Department of Energy Standard Contract" and "claims for failure by the Department of Energy to take Spent Nuclear Fuel." None of the exceptions in the "Excluded Assets" covered the takings claims. Since the assigned claims include the takings claims, the remaining issue is whether the Anti-Assignment Act barred those assignments, as the Assignors contend. In deciding that issue, we assume arguendo, but do not decide, (1) that parties other than the United States may challenge under the Anti-Assignment Act an assignment of claims against the government and (2) that the Assignors are not estopped from challenging their voluntary assignment of such claims.

B. As this court has noted, "[w]hat is commonly called the Anti-Assignment Act consists of two statutory provisions." Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1349 (Fed. Cir. 2002). Under 41 U.S.C. § 15(a), which is not directly at issue in this case, "[n]o contract . . . or any interest therein, shall be transferred by the party to whom such contract . . . is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." This prohibition is inapplicable when the monies due from the United States are assigned to a "financing institution." The other provision, here at issue, 31 U.S.C. § 3727(a)(1), (b), provides that an

> assignment of any part of a claim against the United States Government or of an interest in the claim . . . may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.

This provision contains a similar exception for assignment to a "financing institution" of money due under a contract. 31 U.S.C. § 3727(c).

"These two provisions together broadly prohibit . . . transfers of contracts involving the United States or interests therein, and assignment of claims against the United States." Fireman's Fund, 313 F.3d at 1349.

On its face, this language covers the assignments of the takings claims. The claims had not been allowed (indeed, the government contested them), their amount was undecided, and no warrant for their payment had been issued. The assignee of the claims was not a "financing institution," but a power company. The only basis upon which the assignments could be validated under the Act is if the government validly waived the application of the Act.

C. In Tuftco Corp. v. United States, 614 F.2d 740 (Ct. Cl. 1980), our predecessor court, the Court of Claims, whose decisions are binding precedent here, South Corp. v. United States 690 F.2d 1368, 1370 (Fed. Cir. 1982), held that the government validly waived the prohibitions against the assignment of government contracts in 41 U.S.C. § 15, Tuftco, 614 F.2d at 744. Although the case involved quite different facts, its analysis and reasoning are instructive and helpful in deciding the present case.

In Tuftco, parties to two government contracts to sell goods to the government assigned the contracts to Tuftco and its affiliate to perform them. Prior to the assignments, the original contractors informed the contracting officer about the proposed action, and the latter agreed to and recognized the assignments. The assignee performed the contracts. The government, however, paid a portion of the contract price to the original contractor rather than to the assignee. When the assignee

sued the government for the amount it had not been paid, the government contended

that the Anti-Assignment Act barred the suit.

The Court of Claims rejected the contention. It explained:

> [T]he contracting officer was fully aware of the assignments, recognized them, and communicated such recognition to plaintiff. In this case the action of defendant constituted a waiver of the Act's provisions, including the notice provision applicable to banks and financial institutions. Having chosen to recognize the assignments, defendant was bound to act in accordance with their terms.

Tuftco, 614 F.2d at 743-44.

The court noted "the long-recognized principle that 'Despite the bar of the Anti-Assignment statute (41 U.S.C. § 15), the Government, if it chooses to do so, may recognize an assignment.'" Id. at 745 (citations omitted); see Maffia v. United States, 163 F. Supp. 859, 862 (Ct. Cl. 1958) ("Despite the bar of the [Assignment of Claims Act], the Government, if it chooses to do so, may recognize an assignment.").

The primary dispute in Tuftco was not whether "the Government may recognize an assignment"—the parties had "agreed" it may do so—but over "what actions by the Government will constitute recognition." Id. The Court of Claims held that "the Government was aware of, assented to, and recognized the assignments." Id. In the present case there is no question that if the government may recognize an otherwise invalid assignment of claims against it, the government's written "accept[ance]" of the claims filed in the Court of Federal Claims was a "recognition" of them.

We see no valid reason why the government should not also be able to waive the Anti-Assignment Act's prohibition in section 3727(a) against the assignment of claims. Both provisions of that statute "are for the protection of the Government." United States

v. Aetna Cas. & Sur. Co., 338 U.S. 366, 371 (1949) (quoting Martin v. Nat'l Sur. Co., 300 U.S. 588, 594 (1937)).  Although the two provisions deal with different aspects of relationships and dealings with the government, they serve the common goal of protecting the government from similar problems that may arise from those relationships.  "In general terms, however, the concerns of the two statutes and the legal concepts involved in their applicability are the same."  Tuftco, 614 F.2d at 744, n. 4.  As the Court of Federal Claims here stated, the two statutes "embody similar principles."

If, as in this case, the government concludes that it is appropriate and in its best interest to accept the assignment, it may do so.  As the Court of Federal Claims here properly concluded, the "Government's recognition and acceptance of such an assignment makes it a valid assignment."

The Assignors rely upon older Supreme Court cases that describe assignments within the scope of the Anti-Assignment Act as "null and void" unless they complied with all of the statutory requirements, e.g., National Bank of Commerce v. Downie, 218 U.S. 345 (1910); Nutt v. Knut, 200 U.S. 13 (1906); and McKnight v. United States, 98 U.S. 179 (1878).  At that time, however, the statute itself stated that such assignments were "null and void."  The present statute does not so provide; instead, it merely specifies the conditions under which an assignment of a claim against the United States "may be made" and that "[a]n assignment under this subsection is valid for any purpose."  Even more significantly, none of those cases involved any question of, or decided whether the government could recognize as valid, an assignment of claims that otherwise would violate the statute.

The Assignors also contend that the government should be judicially estopped here from arguing that the Anti-Assignment Act does not preclude the assignment because in <u>Rochester Gas & Electric Co. v. U.S.</u>, 65 Fed. Cl. 431 (2005), a parallel case, it argued that a similar claim assignment was invalid under that Act. In <u>Rochester Gas</u>, however (unlike the present case), the government had not waived the application of the Anti-Assignment Act to the particular claim assignment at issue. In the present case, as we have indicated, except for the waiver, the assignment of the takings claims would violate the Anti-Assignment Act.

CONCLUSION

The judgment of the Court of Federal Claims granting summary judgment for the United States is

<u>AFFIRMED</u>.