# DE WINTER *v.* THOMAS.

CONTRACTS; EQUITABLE LIENS; ATTORNEY AND CLIENT.

1. While an agreement to pay a certain percentage of a fund may, under some circumstances, be deemed equivalent to a promise to pay out of the fund, and so create an equitable lien upon the fund in favor of the promisee, it will not be so construed if the situation of the parties and the attendant circumstances show that it was not the intention of the parties that the fund itself should be looked to for security.

2. Where a legatee under a will, being advised that an attack upon its validity was threatened, employed an attorney to represent her in the matter until a final settlement thereof should be effected, and agreed to pay him a contingent fee of "15 per cent of the sum of money and a sum equal to 15 per cent of the market value of any other property received by her under distribution or compromise," and there was no contest over the will, the attorney claiming that he had averted one, and the legatee received her distributive share of the estate as provided for by the will, it was *held* that the attorney was not entitled to an equitable lien upon such distributive share, but that the agreement merely fixed 15 per cent as the measure of his client's personal liability for the recovery of which he had an adequate remedy at law. (Distinguishing *Willoughby* v. *Mackall*, 1 App. D. C. 411; *Hutchinson* v. *Worthington*, 7 App. D. C. 548; *Sanborn* v. *Maxwell*, 18 App. D. C. 245, and *Arnold* v. *Carter*, 19 App. D. C. 259.)

No. 1964. Submitted December 9, 1908. Decided January 5, 1909. Petition for rehearing granted May 4, 1909. Reargued October 19, 1909. Opinion on rehearing November 30, 1909.

HEARING on appeal by the defendants from a decree of the Supreme Court of the District of Columbia, overruling a demurrer to a bill in equity, and, the defendant electing to stand on her demurrer, granting the relief sought by the bill, namely, the establishment of an equitable lien upon a certain fund.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This suit was begun by the appellee, Henry G. Thomas, against Florence Hunt De Winter and her husband, Nicholas De Winter, to subject certain money and securities in the possession of the said Florence to an equitable lien.

The bill alleges that defendant Florence, being the residuary legatee of the will of Jennie D. Talmage, deceased, retained complainant, who is an attorney at law, to represent her interests as such legatee: and that the following contract was entered into by and between them:

Memorandum of agreement, made and entered into this 24th day of October, 1906, by and between Florence Hunt De Winter, *née* Florence Hunt, and Nicholas De Winter, late of the city of New York, but now residing in the city of Washington, District of Columbia, parties of the first part, and Henry G. Thomas, attorney at law of the city of Washington, District of Columbia, party of the second part, witnesseth:

Whereas, Jennie De Witt Talmage, by her last will and testament, bequeathed to the said Florence Hunt De Winter (by her maiden name, Florence Hunt) certain legacies; and,

Whereas, a controversy has arisen, and, having been informed by the executor and his counsel that an attack upon the will is threatened, the said parties of the first part are desirous of retianing and employing the professional services of the said party of the second part, as such attorney at law, to represent the said Florence Hunt De Winter in the matter until final settlement thereof:

Whereas, the said party of the second part is willing to accept the employment upon a fee contingent upon success, such arrangement being especially desired by the parties of the first part:

Now, therefore, it is hereby mutually agreed by and between the said parties of the first part and said party of the second part as follows:

1. The said parties of the first part do hereby retain and em-

ploy the professional services of the said party of the second part to represent the said Florence Hunt De Winter in the matter aforesaid, until final settlement or distribution under the will, or until final settlement is effected by compromise or by judgment or decree of court. And in consideration of said services the said Florence Hunt De Winter agrees and promises to pay to the said Henry G. Thomas the following fees, contingent upon success in the matter:

(a) In case of distribution under the will as it stands, or in case of a compromise before caveat is filed, fifteen per centum (15%) of the sum of money, and a sum equal to fifteen per centum of the market value of any other property received by her under distribution or compromise.

(b) In case of compromise after caveat is filed and answered, and before trial is begun, twenty per centum (20%) of the sum of money, and a sum equal to twenty per centum of the market value of any other property received by her thereunder.

(c) In case of trial and final success in the lower court, whether the trial ends by compromise or otherwise, twenty-five per centum of the sum of money, and a sum equal to twenty-five per centum (25%) of the market value of any other property received by her.

(d) In case of appeal to the court of appeals and final success therein, twenty-five per centum (25%) of the sum of money, and a sum equal to twenty-five per centum of the market value of any other property received by her, and $250 additional.

(e) In case of an appeal to the Supreme Court of the United States, and final success therein, twenty-five per centum of the sum of money, and a sum equal to twenty-five per centum (25%) of the market value of any other property received by her, and $500 additional.

2. And parties of the first part agree to pay any and all costs that may be taxed against them in the event of any proceeding in the court in connection with this matter, and to pay all expenses of the party of the second part in connection herewith incurred with their approval.

This agreement is to cover all past services in connection with this matter, as well as all future services.

Witness our hands and seals this 24th day of October, 1906.

(Signed)

Mrs. Florence Hunt De Winter. (Seal)

Nicholas De Winter. (Seal)

The bill further alleges that the will aforesaid was probated and the estate duly administered, and that defendant, as legatee aforesaid, received from the executor of said will the sum of $13,161.41 in cash, and real estate notes, due April 1st, 1908, which she accepted in lieu of money, as well as other personal property valued at $65.

It further alleges that complainant, in performance of said contract, succeeding in averting a contest of said will, or any compromise of said claim, and by reason of said services said money and notes were acquired by defendant as aforesaid; and that there became due to him the sum of $1,974.21, upon the approval of the final account of said executor, for which he has an equitable lien upon the said fund.

The prayers of the bill were that defendant be restrained from removing, dissipating, or in any manner disposing of said fund to such an extent as to leave a sufficient sum to answer complainant's demand, with interest and costs of suit; that a receiver be appointed to take charge of such amount of said fund, and defendant be ordered to pay the same to said receiver; that complainant be decreed to have a lien upon said fund to the amount of fifteen per cent thereof, and that receiver be ordered to pay said sum to him.

Defendant entered a demurrer to the bill, which was overruled, and, electing to stand thereon and not to answer, a decree was entered for the complainant for the said sum of $1,974.21, with interest and costs of suit, and declaring the same a lien on the said fund. No order was made restraining the disposition of the fund, and no receiver was appointed. An appeal having been taken to this court said decree was reversed, in accordance

with an opinion delivered January 5th, 1909.* Subsequently on motion of appellee a rehearing was granted, and the cause has again been argued.

*Mr. P. H. Marshall,* for the appellants.

*Mr. J. W. Beller* and *Mr. Conrad H. Syme* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is clear that the contract did not amount to an assignment of a part of the fund expected to be realized, nor is it so claimed.

The contention is that it created an equitable lien upon the proceeds of said estate, which was received by the defendant as residuary legatee.

It is a settled principle of equity that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property or fund a security for a debt or other obligation, creates an equitable lien on the property so indicated. 3 Pom. Eq. Jur. ¶ 1235. And when such intention is not express, but appears, by necessary implication from the terms of the agreement, construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances a lien will attach. *Walker v. Brown,* 165 U. S. 654–664, 41 L. ed. 865, 870, 17 Sup. Ct. Rep. 453; *Ingersoll* v. *Coram,* 211 U. S. 335–368, 53 L. ed. 208, 229, 29 Sup. Ct. Rep. 92. In other words, it must appear either expressly or by necessary implication that the other contracting party looked to the fund itself for payment, and did not rely upon the personal responsibility of the owner of the claim of which the fund was the result.

Tested by these principles, we cannot find that the contract in this case created a lien.

It may be conceded that where the situation of the parties and the attendant circumstances favor such a construction, an agreement to pay a certain percentage of a fund may be deemed

---

*Not reported.—REPORTER.

equivalent to a promise to pay the same out of the said fund. But where either expression is used, the intent must appear that the fund itself is looked to for security. It is true that the fee in this case was contingent upon success in the undertaking, and the defendant was not to be bound to pay any compensation unless there should be a final establishment of the will, and distribution under its terms. Until some money or other property should be obtained under the will there was no personal liability of the defendant for services performed by the complainant. Looking to the situation of the parties, and the attendant circumstances as disclosed by the contract, it is apparent that it was contemplated that the legacy should be delivered to the defendant, and there is no allegation of an attempt to stop the fund in the hands of the executor, who paid it over to her.

In case of success in the undertaking, the defendant, receiving the fund and the property, became personally bound to pay to complainant "15 per centum of the sum of money, and a sum equal to 15 per centum of the market value of any other property received by her under the distribution or compromise." All that can be properly inferred from this stipulation of the agreement is that the 15 per centum of the money and of the value of the other property fixes the measure of the defendant's personal liability upon her receipt of the same in distribution; and for the recovery of this complainant has an adequate remedy at law. This conclusion is supported by *Trist* v. *Child* (*Burke* v. *Child*) 21 Wall. 441, 442, 22 L. ed. 623, in which the contract so far as the compensation is involved is similar. The following decisions of this court are relied on by the appellee: *Willoughby* v. *Mackall,* 1 App. D. C. 411; *Hutchinson* v. *Worthington,* 7 App. D. C. 548; *Sanborn* v. *Maxwell,* 18 App. D. C. 245; *Arnold* v. *Carter,* 19 App. D. C. 259. Without reviewing those cases it is sufficient to say that their facts are essentially different. The lien in each of those cases, save one, was express, and in that one it appeared by necessary implication from the

contract, construed with reference to the situation of the parties, and the attendant circumstances.

The decree must be reversed with costs, and the case remanded with direction to dismiss the bill.                    *Reversed.*

On December 15, 1909, a motion by the appellee for a modification of the decree of this court was overruled; on December 17, 1909, a motion by him for a rehearing was likewise overruled, and on February 2, 1910, the Supreme Court of the United States denied his application for a writ of certiorari.