## LINDBERG v. HUMPHREY et al.

(Court of Appeals of District of Columbia. Submitted November 7, 1922. Decided May 7, 1923.)

### No. 3858.

**1. United States ⬤�net111—Contract giving attorney lien on claim before allowance is void.**

Under Rev. St. § 3477 (Comp. St. § 6383), making assignments of claims against the United States void, unless made in the manner set forth therein after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for its payment, a contract by a claimant giving an attorney a lien on the claim for the amount of his services in prosecuting it is void, if entered into before the allowance of the claim.

**2. Liens ⬤⟷7—United States ⬤⟷111—Attorney cannot claim equitable lien on claim of client.**

An attorney who prosecutes for a client a claim against the United States cannot claim an equitable lien on the amount of the claim subsequently allowed for his compensation as a lien arising by operation of law, and thereby defeat the purpose of Rev. St. § 3477 (Comp. St. § 6383), invalidating assignments of claims before allowance, which was to forbid any one who was a stranger to the original transaction to come between the claimant and the government prior to the allowance.

**3. United States ⬤⟷111—Valid assignment by operation of law of allowed claim does not include contract with his attorney.**

The rule that Rev. St. § 3477 (Comp. St. § 6383), prohibiting assignments of claims against the government before their allowance, does not stand in the way of giving effect to an assignment by operation of law after the claim has been allowed, refers to assignments such as those by descent, by will, by bankruptcy or insolvency, and general assignments for the benefit of creditors, and does not include a contract for the compensation of an attorney who represented the claimant in procuring the allowance of the claim.

**4. Liens ⬤⟷7—Appropriation of fund by debtor is essential to equitable lien.**

To create an equitable lien it must appear that there has been a distinct appropriation of the fund by the debtor and an agreement that the creditor should be paid out of it.

**5. Process ⬤⟷86—Situs of claim of defendant gives no juridiction by publication, if plaintiff has no lien thereon.**

Where the facts showed that plaintiff had no valid lien on a claim of defendant allowed by the United States, the question of the situs of the claim within the District is immaterial, since the situs of the claim alone does not authorize notice to a nonresident defendant by publication under Code, § 105.

Appeal from the Supreme Court of the District of Columbia.

Suit by William E. Humphrey against Otto W. Lindberg, Andrew W. Mellon, as Secretary of the Treasury, and another. From an order overruling the motion of defendant Lindberg to quash service attempted to be made on him by publication, to vacate the order purporting to authorize the service, and to dismiss the bill of complaint, that defendant appeals. Reversed and remanded, with directions to quash the service and dismiss the bill.

⬤⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

B. E. Hinton, of Washington, D. C., for appellant.

Peyton Gordon, Vernon E. West, and W. C. Prentiss, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

BARBER, Acting Associate Justice. This is an appeal from an order of the Supreme Court of the District of Columbia overruling a motion of appellant Lindberg to quash service attempted to be made on him by publication, to vacate the order purporting to authorize the same, and to dismiss the bill of complaint. The facts necessary of consideration may be briefly summarized as follows:

Lindberg, a citizen of the United States and resident of the state of New Jersey, had sustained losses as a subcontractor in construcing certain buildings for the United States, and employed Humphrey an attorney, a citizen of the United States and of the state of Washington temporarily domiciled and practicing law in the District, to draft and obtain legislation under which Lindberg might secure reimbursement for his said losses and also to represent him before the Treasury Department in presenting and obtaining payment of his claim. The employment agreement was not in writing, was of course made before Lindberg's claim was allowed, and was, as set out in the bill, that Lindberg was to pay the plaintiff—

"as his fee a sum equal to 10 per centum of any or such amount as might be recovered through legislation granting relief to defendant in the premises, and to pay such fee to the plaintiff out of the proceeds of any draft or warrant issued to defendant pursuant to any such legislation, when and as received by the defendant."

Thereafter, as a result in part, at least, of Humphrey's services, legislation by Congress was obtained (see Acts of August 25, 1919, and March 6, 1920 [41 Stat. 281, 507]) for the relief of contractors and subcontractors of post offices and other buildings, under and by virtue of which Lindberg, in common with others, became entitled to present his claim to the Treasury Department for audit, settlement, and allowance.

Soon after the legislation was enacted Lindberg rejected the further services of Humphrey, which he was all the time ready to perform, presented his own claim to the department upon which he received an allowance of $21,000, and refused to pay the plaintiff's fee under the above contract. Humphrey thereupon brought his bill in equity against Lindberg, the Secretary of the Treasury, and the Treasurer of the United States, alleging the foregoing facts, and that it was the purpose of Lindberg, upon receiving payment of his claim, to remove the funds from the jurisdiction of the court, "and thus deprive the plaintiff of his equitable lien upon the proceeds of said claim when paid to said defendant," therein asking for an injunction restraining Lindberg from receiving and the treasury officials from paying Lindberg's claim to him, and for the appointment of a receiver to receive the amount allowed to him and retain the same subject to the further order of the court.

The bill also prayed for a decree that Humphrey was entitled to 10 per centum of the amount found by the Treasury Department to be due Lindberg, alleged Humphrey had a lien thereon for his fees and that the plaintiff was without any plain, adequate, and complete remedy at law. There was no allegation that a check or warrant had been drawn to pay the claim or that Lindberg was insolvent.

Lindberg entered no appearance in the suit or in any manner submitted to the jurisdiction of the court. Such proceedings were had that an order of notice by publication to him under section 105 of the District Code was issued, and the treasury officials, Mellon having been in the meantime substituted for Houston and Allen for Burke, were enjoined pendente lite from paying to Lindberg any part of his claim in excess of 90 per cent. thereof.

After the order of notice by publication was entered, Lindberg appeared specially by attorney and only for the purpose of moving to quash the service, to vacate the order therefor and dismiss the bill on the ground that he was a nonresident of the District, that the debt of the United States to him had no situs in the District, that therefore the court had no jurisdiction to issue said order for service, that the plaintiff's remedy, if any, was at law, and that it did not appear that the plaintiff had any valid lien upon the fund.

This motion was overruled and pending the determination of Lindberg's appeal therefrom publication was deferred. After the appeal was taken, it further appeared that Lindberg's claim had been finally audited and allowed at $85,788.55. Before the appeal was allowed the defendant treasury officials answered the bill, admitting that Lindberg had submitted a claim to the Treasury Department, but denied that the same had been adjusted, settled, and allowed, and alleged that there was then nothing due him.

There is no claim that the bill does not state a case of employment and the rendering of legitimate and effective service thereunder. It is apparent that the question here is: Had the Supreme Court of the District jurisdiction under section 105 of the District Code to issue the order of notice by publication? That section provides for service by publication upon nonresident defendants for the enforcement of liens against real or personal property within the District, and in all other actions of law and equity which have for their immediate object the enforcement or establishment of any lawful claim, right, or demand to or against any real or personal property within the jurisdiction of the court.

As between Lindberg and Humphrey, the argument here proceeds upon the theory, assuming the facts alleged in the bill to be true, that only two important questions stand for determination: (a) Does the claim of Lindberg against the government constitute property having a situs in the District? (b) Has Humphrey a lien thereon? Lindberg also contends that the plaintiff has a plain, adequate, and complete remedy at law.

[1] Section 3477, Revised Statutes (Comp. St. § 6383), provides that transfers and assignments of claims against the United States shall be absolutely null and void, unless made in the manner set forth

in the section, "after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof."

We proceed to the consideration of point (b). In Nutt v. Knut, 200 U. S. 13, 26 Sup. Ct. 216, 50 L. Ed. 348, the material facts were similar to those in the case here. The contract was that the attorney who agreed to prosecute a claim against the United States should receive "a sum equal to 33⅓ per cent. of the amount which may be allowed on said claim, the payment of which is hereby made a lien upon said claim, and upon any draft, money, or evidence of indebtedness which may be issued thereon."

The court distinctly held that this contract, entered into before the claim was allowed, gave the attorney no interest or share in the claim asserted against the government, created no lien thereon or on any draft or evidence of indebtedness issued by the government on account of the same, and to that extent was void under the above statute. It was also held that, although under the agreement the attorney had no interest or share in the claim itself, or any interest in the *particular money paid over to the claimant by the government*, the contract did, nevertheless, establish an agreed basis for any settlement as to the attorney's compensation that might be made *after the allowance and payment* of the claim to the claimant or his estate, and simply created a legal obligation on the part of the claimant's estate to pay such attorney, which could have been enforced by suit for his benefit without violating the statute.

In National Bank of Commerce v. Downie, 218 U. S. 345, 31 Sup. Ct. 89, 54 L. Ed. 1065, 20 Ann. Cas. 1116, the application of section 3477 was again fully considered and the earlier decisions reviewed. Upon mature consideration it was in effect held that thereunder all voluntary assignments of claims against the government, before allowance thereof, the ascertainment of the amount due, and the issuing of a warrant for the payment of the same, were absolutely null and void, and did not pass to the assignee any interest, present or remote, legal or equitable, in the claims so attempted to be transferred, and that notwithstanding such attempted assignment the assignors thereof were still in law the owners of such claims. Like conclusion was reached in Calhoun v. Massie, 253 U. S. 170, 40 Sup. Ct. 474, 64 L. Ed. 843. In the Downie Case it was also held that the prohibition of the statute did not embrace the transfer of a claim against the United States, where the transfer was by operation of law, not as the result of a voluntary assignment by the claimant.

It is clear, therefore, that the contract with Lindberg, so far as giving to Humphrey an interest, legal or equitable, in the claim, or a lien thereon or on any warrant issued in payment therefor, was absolutely null and void, because it was made before the claim was allowed.

[2] Humphrey does not deny this, but contends, nevertheless, that he has an equitable lien or an equitable interest in the claim, when ascertained, and in the warrant issued for the payment therefor, which constitutes a transfer thereof to him by operation of law, within the

authority of the Downie Case and those referred to therein. He does not contend for an attorney's charging lien, but argues that the rule of Nutt v. Knut and Bank v. Downie, supra, has been so far modified or limited in Houston v. Ormes, 252 U. S. 469, 40 Sup. Ct. 369, 64 L. Ed. 667 (also reported as McAdoo v. Ormes in 47 App. D. C. 364), that an attorney sustaining the relation to a case that Humphrey does here "acquires by operation of law a particular interest in or an equitable right to have his fee paid out of the fund created by his services, and that as such interest or right arises by operation of law it is not within the inhibition of the statute."

It is clear that, if this contention be upheld, the purpose of section 3477, which was "to forbid any one who was a stranger to the original transaction to come between the claimant and the government prior to the allowance of the claim, and who in asserting his own interest or share in the claim pending its examination might embarrass the conduct of the business on the part of the officers of the government" (Nutt v. Knut, supra), is defeated, and a court of equity is allowed to award under an implied contract that which it is forbidden to allow under an express contract, or, to put it more baldly, to allow that which is unlawful.

Examination of the Ormes Case, however, establishes the fallacy of this contention. There the treasury officials only appealed from a decree directing them to pay to a receiver a fund appropriated by Congress to a specified person in satisfaction of a finding of the Court of Claims, upon which fund the District Court had found the attorney had a lien. By what contract, if any, the lien was created, does not appear, and no such contention as the one now under consideration appears to have been before the Supreme Court of the United States. The nonresident defendant had submitted to the jurisdiction and taken no appeal from the judgment against her. It was held that the suit was not against the government, as claimed by the Treasury officials because the payment of the claim was a ministerial duty, and the judgment below was affirmed.

The locus or situs of the claim against the United States as a jurisdictional fact was referred to, as to which this court held that, the nonresident defendant having appeared, there was no merit in the contention that the situs of the debt was not here, and the Supreme Court, reaching the same conclusion with reference to that question, said that if she had not appeared, and had questioned the jurisdiction of the lower court upon the theory that her claim against the government was not property within the District, "the point would require consideration." It is quite clear that the jurisdiction of the Supreme Court of the District was upheld, not because of any lien in favor of the attorney created by a void contract with reference to the prosecution of the claim, but because of the appearance of the defendant. The cases of Bank v. Downie and Nutt v. Knut were not referred to in the opinion of the Supreme Court, and we are clear the rule of those cases was not in any wise limited by the decision in the Ormes Case.

[3] Nor does Humphrey bring himself within the law, stated in the Ormes Case, that section 3477 does not stand in the way of giving

effect to the assignment by operation of law after the claim has been allowed. The assignments there referred to are such as the passing title to claims from the original claimant by descent, by will, by bankruptcy or insolvency, and general assignments for the benefit of creditors. Price v. Forrest, 173 U. S. 410, 19 Sup. Ct. 434, 43 L. Ed. 749, and cases cited.

[4] To create an equitable lien it has long been the law that it must appear that there has been "a distinct appropriation of the fund by the debtor and an agreement that the creditor should be paid out of it." Wright v. Ellison, 1 Wall. 16, 17 L. Ed. 555; Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999; Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208; Taylor v. Wharton, 43 App. D. C. 104. Disregarding the agreement in this case, there is no contract here creating an equitable lien.

Humphrey also relies upon the case of Winton v. Amos, 255 U. S. 373, 41 Sup. Ct. 342, 65 L. Ed. 684. In that case certain claims and property rights had by attorneys been secured and established to and for the benefit of a class of Indians under legislation authorizing the same. A subsequent statute declared that a lien on such claim and property rights existed in favor of such attorneys, and provided for the ascertainment thereof. The chief issue in the case was whether such legislation was unconstitutional, as depriving the Indians of their property without due process of law. This was denied, and it was held that, in view of the special relation of the Indians to the government as a class of beneficiaries under a trust of a public nature, it was equitable to impose a charge for reimbursement and compensation upon the interests of such beneficiaries, the same as if a like result had been reached through successful litigation in the courts. Nutt v. Knut, supra, and similar cases we have hereinbefore referred to, were not mentioned in the opinion, and we do not think the Winton Case limits or overrules the same. We have here no trust fund in the control of the court or in the hands of the government, and no statute authorizing a lien thereon.

The case of Jones v. Rutherford, 26 App. D. C. 114, is cited. In that case Jones, a nonresident, had a claim against the government, and contracted in advance with his attorney to prosecute the same in manner very similar to the case at bar. Later the claim was allowed and a draft drawn by the treasury officials to pay it. The executrix of the attorney, who was a resident of the District, brought suit in equity in the District Supreme Court against Jones to enforce the lien claimed to exist by virtue of the contract, against the draft in the hands of the treasury officials, who were also made defendants in the bill. A receiver was appointed to demand and receive the draft, and notice to the nonresident defendant by publication was ordered and given. Jones thereafter appeared specially and moved to vacate the order of publication on the ground that the court was without jurisdiction to issue the same. This motion was denied, and an appeal allowed.

The opinion shows that the right of the executrix to her lien was not contested in this court, if the draft was properly subject thereto. Section 3477 was considered and deemed inapplicable because the

court found that under the agreement it was contemplated that the draft should be delivered to the attorney and held by him until his fee was paid.

The principal question regarded as at issue in the case was whether the draft in the hands of the Treasury Department was property within the District of Columbia. None of the cases in the Supreme Court of the United States holding that section 3477 rendered void such contracts were cited to or considered by the court, so far as appears by the opinion. It is evident that, at least in so far as Jones v. Rutherford may be regarded as authority for justifying the establishment of a lien on a claim against the United States under and by virtue of such a contract as the one here, it is contrary to the holding of the Supreme Court in Nutt v. Knut, supra, and therefore must to that extent at least be regarded as overruled.

In view of the express provision of section 3477 and the authorities cited, we hold that the plaintiff below has failed to allege any facts which prima facie tend to show that he has any title or interest, legal or equitable, in Lindberg's claim against the government, or the amount thereon found due, or any lien thereon or any lawful right, claim, or demand to or against the same, or against any draft or warrant that may be issued in payment therefor. One of the necessary jurisdictional facts is therefore wanting, and the order of notice by publication to Lindberg is unauthorized and void.

[5] As he has not submitted to the jurisdiction, the court below can enter no valid judgment against him, and a receiver appointed in the proceeding cannot give any acquittance to the government for any part or all of the claim allowed to Lindberg that will be binding upon him or discharge the obligation of the government to pay him the whole amount found due. It is therefore immaterial whether or not the debt due Lindberg is property within the jurisdiction, because the existence of that fact alone would not authorize the notice by publication in this case.

The treasury officials in their brief make in substance the same contentions as does Lindberg, and in addition contend that the purpose of the bill is in effect an attachment by way of garnishment of funds in the treasury of the United States, that the suit is one against the United States, and that the bill seeks the aid of the court to control for the purpose of settling a dispute the administrative discretion, duties, and functions of government officials.

Among other things they argue that there is no distinction between the claim of an attorney growing out of professional services rendered for a creditor of the United States and a claim for supplies furnished to such creditor, in each case with the understanding that payment for the same should be made out of any check or warrant received by such creditor from the United States. In view, however, of the conclusion we have already reached, it seems unnecessary to consider the points made by the government, or any other questions raised by Lindberg on his appeal.

The judgment below is reversed, with costs, and the case remanded, with directions to quash the service and dismiss the bill.

Petition for allowance of appeal to the Supreme Court of the United States denied May 19, 1923.

Petition of appeal to the Supreme Court of the United States and order of the Chief Justice of the United States allowing same June 2, 1923.