Martha S. **ELAM**, Appellant,

v.

**MONARCH LIFE INSURANCE COMPANY**, Appellee.

**No. 90–1510.**

District of Columbia Court of Appeals.

Argued June 25, 1991.

Decided Nov. 8, 1991.

Richard S. Schrager, with whom Howard M. Rensin was on the brief, for appellant.

Loretta J. Garcia, with whom James L. Nolan was on the brief, for appellee.

Before TERRY, FARRELL and WAGNER, Associate Judges.

FARRELL, Associate Judge:

In this certification of questions of law pursuant to D.C.Code § 11–723 (1989), we are asked to decide the following two related questions regarding the nature of an attorney's charging lien under District of Columbia law arising from a contingent fee agreement between an attorney and client: [1]

1. Under District of Columbia common law, does a contingent fee agreement between an attorney and his client which sets contingent compensation at "a sum

---

1. The United States Court of Appeals for the District of Columbia Circuit certified these questions to us on November 9, 1990. *Monarch Life Ins. Co. v. Elam*, 286 U.S.App.D.C. 396, 918 F.2d 201 (1990).

equal to" a portion of any recovery on the client's cause of action create an attorney's charging lien in favor of the attorney?

2. Under District of Columbia common law, does a validly created attorney's charging lien attach to the proceeds of settlement when the settlement fund out of which the attorney seeks payment is within the possession or control of the court? [2]

Consistent with general principles of contract interpretation, we conclude that whether or not an attorney's charging lien has been created depends on the language and surrounding circumstances of the employment agreement. Consequently, we hold that an agreement providing for the client's payment of "a sum equal to 33⅓% (⅓) of any sum I shall recover as the result of this accident" creates an attorney's lien on the funds recovered when, under the circumstances, it is reasonable to conclude that the parties looked to the recovered funds for payment. The present agreement satisfies that test. We also hold that, in general, a lien so created attaches when the fund comes into existence, whether by judgment or by settlement.

## I.

■ Appellant Elam and her attorney, Howard M. Rensin, executed an employment contract for Rensin's services in regard to Elam's claim for damages against Sonya Steele.[3] The agreement provided:

I, Martha Elam, the undersigned, hereby retain and employ HOWARD M. RENSIN, Attorney at Law to represent me in my claim for damages against Sonya Steele for injuries sustained on Nov. 13, 1985 at 3rd St. N.W.

I hereby agree to pay my attorney for his services, a sum equal to 33⅓% (⅓) of any sum I shall recover as the result of

this accident. I agree to reimburse my attorney for all out-of-pocket expenses including, but not limited to, filing fees, court costs, investigative fees, process serving fees, deposition costs and the like incidental with the handling of my case.

In the event nothing is recovered, my attorney shall receive nothing for his services.

In September 1987, Elam filed suit against Steele for damages in the United States District Court for the District of Columbia. On October 26, 1988, the parties agreed to settle the case. Under the settlement agreement, Steele's insurance company agreed to pay Elam $19,000 in exchange for Elam's promise to dismiss the lawsuit against Steele.

While the settlement was being consummated, appellee Monarch Life Insurance Company (Monarch) filed an action in the United States District Court for the District of Columbia to enforce a judgment Monarch had previously obtained against Elam,[4] and the District Court issued a writ of attachment in judgment. This judgment was served on Steele's insurance company, which was holding Elam's $19,000 in proceeds from the settlement of the lawsuit against Steele. In response to Monarch's motion for condemnation, Elam asserted Rensin's attorney's charging lien on the proceeds of the lawsuit.[5] The District Judge refused to recognize the attorney's lien on the funds and granted judgment in favor of Monarch.

On appeal to the United States Court of Appeals for the District of Columbia Circuit, Monarch argued that the terms of Elam's contingent fee contract with her attorney—providing for payment of a sum "equal to" a percentage of the recovery—failed to create a lien on the settlement

---

2. As the Circuit Court recognized, the District of Columbia has no statute regulating attorney's liens, which therefore are governed by common law rules. *Pink v. Farrington,* 67 App.D.C. 314, 315, 92 F.2d 465, 466, *cert. denied,* 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 572 (1937).

3. On November 13, 1985, Elam had sustained injuries in an automobile accident with Steele.

4. In August 1988, Monarch had obtained a judgment for $18,347.08 plus interest against Elam in the United States District Court for the Eastern District of Virginia.

5. Elam asserted other defenses in addition to her attorney's lien. The validity of her other defenses has not been certified to us, and we express no opinion on them.

proceeds in favor of the attorney. *See Thurston v. Bullowa,* 42 App.D.C. 18, *cert. denied,* 234 U.S. 756, 34 S.Ct. 674, 58 L.Ed. 1578 (1914); Annotation, *Terms of Attorney's Contingent–Fee Contract as Creating an Equitable Lien in His Favor,* 143 A.L.R. 204, 220 (1943) ("Ordinarily, where the language is, in substance, that the client will pay "an amount equal to" a specified percentage or fraction of the recovery, no lien is created"). Moreover, even if an attorney's lien exists in such circumstances, Monarch argued that it would attach only to judgment funds and not pre-judgment proceeds obtained under a settlement agreement. *See Lyman v. Campbell,* 87 U.S.App.D.C. 44, 46, 182 F.2d 700, 702 (1950).

In certifying these issues to this court, the United States Court of Appeals questioned the validity of *Thurston* in view of subsequent decisions recognizing valid liens under similar contingent fee agreements.[6] The court also questioned the distinction, in deciding when an attorney's lien attaches, between funds recovered by judgment and funds recovered by settlement.

## II.

Under the common law, an attorney has a nonpossessory lien to secure payment for services rendered in a particular case. 2 S. SPEISER, ATTORNEYS' FEES § 16.14, at 381 (1973).

> The special or charging lien, as recognized by the common law, gives an attorney the right to recover his taxable costs, or his fees and money expended on behalf of his client, from a fund recovered by his aid, and the right to have the court interfere to prevent payment by the judgment debtor or the creditor in fraud of the attorney's right to it, and to pre-

vent or set aside assignments or settlements made in fraud of his right.

*Id.*[7] Once "the contracting party [the client] sufficiently indicates an intention to make some particular property or fund a security for a debt or other obligation," an equitable lien is created "on the property so indicated." *De Winter v. Thomas,* 34 App.D.C. 80, 84 (1909), *cert. denied,* 215 U.S. 609, 30 S.Ct. 411, 54 L.Ed. 347 (1910); *see also Lindberg v. Humphrey,* 53 App. D.C. 243, 289 F. 901 (1923), *overruled on other grounds sub nom. Morgenthau v. Fidelity & Deposit Co.,* 68 App.D.C. 163, 166, 94 F.2d 632, 635 (1937); Annotation, *Attorney's Contract for Contingent Fee as Amounting to an Equitable Assignment of Interest in Cause of Action, or Proceeds of Settlement Thereof,* 124 A.L.R. 1508, 1509 (1940). The test is whether the parties "looked to the fund itself for payment, and did not rely upon the personal responsibility of the owner of the claim of which the fund was the result." *De Winter,* 34 App.D.C. at 84.

> [W]hile it is not necessary that there be an outright legal assignment of the judgment to the attorney, it is indispensable that there exist between the client and his attorney an agreement from which the conclusion *may reasonably be reached* that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered.

*Pink v. Farrington, supra* note 2, 67 App. D.C. at 316, 92 F.2d at 467 (emphasis added).

In the present case, the employment agreement "sufficiently indicates an intention" by Elam, *De Winter, supra,* to create a lien in favor of the attorney on the funds received in her claim for damages against

6. *See Friedman v. Harris,* 81 U.S.App.D.C. 317, 158 F.2d 187 (1946); *Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 322, 106 F.2d 841, 843 (1939); *Kellogg v. Winchell,* 51 App.D.C. 17, 273 F. 745 (1921); *Sullivan v. Tobin,* 42 App.D.C. 430 (1914).

7. *See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik v. Baucom,* 428 So.2d 1383, 1384–85 (Fla.1983) (requirements for an attorney's charging lien under Florida's common law);

*Recht v. Urban Redevelopment Auth.,* 402 Pa. 599, 606–10, 168 A.2d 134, 138–39 (1961) (elements of an attorney's charging lien under Pennsylvania's common law). In the District of Columbia, an attorney's lien is not created merely because an attorney performs work for a client leading to a judgment; there must be an underlying contractual basis for the lien. *Pink v. Farrington, supra* note 2, 67 App.D.C. at 316, 92 F.2d at 467.

Steele. Elam promised to pay her lawyer "a sum equal to" one third of her ultimate recovery. She agreed to pay him, however, only "in the event" of recovery since if nothing was recovered on the claim, the contract provided that the "attorney shall receive nothing for his services." Implicit in the agreement, therefore, was the attorney's understanding that he would look to the fund recovered for payment and not to the personal resources of Elam. Applying *Pink v. Farrington, supra,* the "conclusion may reasonably be reached that [the parties] contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered." *See also In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 576 (7th Cir.1986) (contingent fee agreement for "Forty Percent (40%) of any recovery made in [Brass Kettle's] behalf" created enforceable lien under Illinois common law).

It is true, as Monarch argues, that in *Thurston v. Bullowa, supra,* the court of appeals rejected a claim that "a contract for an amount *equivalent to* a certain proportion of the amount recovered" created an attorney's lien against the fund recovered. 42 App.D.C. at 23. If the law had stood still since *Thurston,* a division of this court might well be impelled to the same result in construing the present agreement to pay "a sum equal to" a percentage of the recovery. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). But, as the Circuit Court recognized in this case, as early as *Kellogg v. Winchell, supra,* decided seven years after *Thurston,* the court held identical language adequate to permit intervention by an attorney when the client sought to dismiss the suit filed at the client's behest. Under the contingent fee agreement, the attorney was to receive *"a sum equal to* 50 per cent of any amount obtained by his client, either directly or indirectly, through his efforts." *Kellogg,* 51 App.D.C. at 18, 273 F. at 746 (emphasis added). When the client withdrew the attorney's authority to proceed further, the court allowed the attorney to intervene on his own account, for "[i]t was undoubtedly the intention of the parties that he should be permitted to prosecute the case to a final determination" and so earn his contingent fee. *Id.* at 19, 273 F. at 747. In *Continental Casualty Co. v. Kelly, supra* note 6, the court declared that *"Kellogg* ... determine[s] the principle which should control," *id.* 70 App.D.C. at 322, 106 F.2d at 843, in holding that an agreement providing for a contingent fee of "33⅓% out of any judgment" obtained against the defendant created "a contract lien" which, though "inchoate before judgment, ... relates back and takes effect from the time of the commencement of the suit." *Id.*

The rule we distill from these decisions, and the others cited in note 6, *supra,* is the one stated in *Pink v. Farrington,* which inquires whether it is reasonable to infer from the contingent agreement that the parties looked to the fund recovered as the source of the attorney's payment. Any more stringent rule making the existence of an attorney's lien depend, for example, on whether words of equivalency ("a sum equal to") or identity ("thirty percent *of* the funds recovered") are used, would be inconsistent both with the general rules of contract interpretation governing this subject and with "[t]he trend of the modern decisions ... to protect the right of the attorney to receive compensation for his services." *Kellogg v. Winchell,* 51 App.D.C. at 19, 273 F. at 747. It also would perpetuate a strained distinction between a cause of action under the fee agreement and a lien. In *Nutt v. Knut,* 200 U.S. 13, 26 S.Ct. 216, 50 L.Ed. 348 (1906), for example, the client agreed to pay the attorney "a sum equal to 33⅓ per cent of the amount which may be allowed on said claim [against the United States government], the payment of which is hereby made a lien upon said claim and upon any draft, money or evidence of indebtedness which may be issued thereon." *Id.* at 13, 26 S.Ct. at 217. The Supreme Court considered the lien clause and the fee clause separately. Since the lien clause was made in violation of federal law, it was void on its face. *Id.* at 20–21, 26 S.Ct. at 219–20. The Court then determined that, although the fee clause did not create an attorney's lien because it "only established an agreed basis for any settlement that

might be made ... as to the attorney's compensation," it was a valid contract clause that would furnish a proper basis for the attorney's claim against the client for compensation in an action under the contract. *Id.* at 21, 26 S.Ct. at 219–20. In our judgment, where it reasonably appears that the parties to a contingent fee agreement looked to recovery as the source of any fees payable to the attorney, there is no sound basis for recognizing a cause of action under the agreement but not an equitable lien against the intended source.[8]

### III.

The second certified question is whether a validly created attorney's lien attaches to the proceeds of settlement, as opposed to a court judgment, when the settlement fund out of which the attorney seeks payment is within the possession or control of the court. The qualifying clause was placed on the certified question because in *Lyman v. Campbell, supra,* relied on by the District Judge, the court of appeals appeared to rule that a charging lien could only attach to a court judgment or decree, not a settlement—*at least* when the funds recovered were not in the court's possession or control:

> The charging lien at common law was applicable to a judgment or decree obtained for a client by an attorney; it was not strictly a possessory lien, but was "merely a claim to the equitable interference by the court to have that judgment held as security for his debt [the attorney's charges against the client]." This claim to "equitable interference by the court" did not arise until a judgment or decree had been obtained; prior to that time, the client could settle the case. In the present case, of course, no judgment

or decree was obtained; there was only a pending suit, which has been dismissed. Nor have any funds ever come into the court's possession over which it could conceivably exercise equitable control.

87 U.S.App.D.C. at 46, 182 F.2d at 702 (citations omitted). In *Lyman,* the funds in question were in the form of a government refund check which, by agreement, had immediately been returned to the government to pay an income tax arrearage. The court therefore concluded:

> We have not been advised of any decisions in this or any other jurisdiction in which the courts have in the absence of statute granted relief to an attorney situated as the appellant is in this case, namely, *where settlement has been effected through set-off,* prior to the obtaining of a judgment or decree, and where no conspiracy to defeat the attorney's claim has been charged.

*Id.* (emphasis added).

Monarch argues that *Lyman* must be read to hold that an attorney's charging lien attaches only to proceeds of a judgment and not a settlement. We do not agree that it must be read this broadly. To do so would conflict with the broader rule we discern in the cases that "generally ... where an attorney contracts for the prosecution of a case for a contingent fee, payable out of the fund recovered, ... an equitable lien is created against the fund and attaches to it *when it is recovered.*" *Wardman v. Leopold,* 66 App.D.C. 111, 114, 85 F.2d 277, 280, *cert. denied,* 299 U.S. 570, 57 S.Ct. 33, 81 L.Ed. 420 (1936) (emphasis added); *see also Barnes v. Alexander,* 232 U.S. 117, 121, 34 S.Ct. 276, 277–78, 58 L.Ed. 530 (1914) ("[a]t the latest, the moment the fund was *received* the contract attached to it as if made at that moment")

---

8. Our conclusion should not be read to discourage the drafting of agreements with more precision than shown here, *i.e.,* expressly assigning part of the cause of action and proceeds to the attorney. Speiser gives an example containing the following language, deficient only in a certain want of plain English:

> That in consideration of such services rendered by said attorneys, there is hereby transferred and assigned to them a one-half interest in said claim and cause of action, and in

any compromise, settlement, judgment, or recovery thereupon; provided, however, that if said claim and cause of action be such that the fee allowed to an attorney is set by law, the interest hereby assigned to said attorneys shall be limited to the maximum so allowed by law. In the event my case is compromised before trial I agree to pay ⅓ of the amount recovered as attorney's fees.

1 S. SPEISER, *supra,* § 2:32, at 124.

(emphasis added).[9] This focus on recovery or receipt of the fund, rather than on how it was received, is consistent with decisions of other courts interpreting state common law. *E.g.*, *Miller v. Detroit Auto. Inter-Ins. Exch.*, 139 Mich.App. 565, 567–70, 362 N.W.2d 837, 838 (1984), *lv. denied*, 422 Mich. 944 (1985) (under Michigan common law, "no [attorney's] lien attaches before judgment *except by* special agreement such as a contingent fee agreement") (emphasis added); *Fuller v. Stonewall Casualty Co.*, 304 S.E.2d 347 (W.Va.1983) (under West Virginia common law, valid attorney's lien existed on proceeds of settlement when parties agreed to contingent fee arrangement); *Litman v. Fine, Jacobson, Schwartz, Nash, Block & England*, 517 So.2d 88, 92 n. 4 (Fla.Dist.Ct.App.1987), *review denied*, 525 So.2d 879 (Fla.1988) (under Florida common law, "[i]n settlement cases, the attorney is no less entitled to have a properly asserted charging lien enforced by the court [than in cases terminated with positive judgments or decrees]"); *see also Aetna Casualty & Sur. Co. v. Starkey*, 116 Mich.App. 640, 644–46, 323 N.W.2d 325, 328 (1982) (attorney's lien could attach to recovery of no-fault insurance personal protection benefits). *Lyman, supra,* is properly confined to its special facts in which the "recovery" as part of a set-off meant that no funds became available "over which [the court] could conceivably exercise equitable control." 87 U.S.App.D.C. at 46, 182 F.2d at 702.

In this case, the parties' agreement provided that creation of the fund was dependent on recovery. Recovery was accomplished by settlement, and no claim is made that the settlement fund is not within the equitable control of the court. Thus, the lien attached, "at the latest, the moment a settlement was made between [Elam] and [Steele]." *Sullivan v. Tobin, supra* note

6, 42 App.D.C. at 433. A less generous rule, as the Circuit Court recognized in certifying the question to us, would be unsound as a matter of policy:

> The justification underlying the lien—enabling parties to pursue their legal claims—would appear to apply equally to both [settlement and judgment funds]. Indeed, drawing the distinction asserted by Monarch would skew the incentives of attorneys representing indigent clients, at the possible expense of both the clients themselves and the legal system more generally. For example, the increase in probability of compensation from a judgment (and the resulting perfected lien) might incline a lawyer to take a claim to trial even though the client's interests favored settlement, or, at a minimum, to incur the costs of embedding the settlement in a judgment.

286 U.S.App.D.C. at 401, 918 F.2d at 206.

The clerk shall certify these answers to the United States Court of Appeals for the District of Columbia Circuit.

WAGNER, Associate Judge, concurring in part and dissenting in part:

The majority reaches a reasonable conclusion on the first issue before the court, but one, which in my view, remains foreclosed to this panel by applicable precedents. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).[1] Acknowledging that a different result "might well be impelled," at least under the cases decided prior to *Kellogg v. Winchell*, 51 App.D.C. 17, 273 F. 745 (1921),[2] the majority concludes that the language in the fee clause in the subject contract created an equitable lien on any settlement recovered. It is with the majority's determination that *Kellogg* effected a change in prior decisions that I disagree. A brief examination of the cases which hold otherwise and of the holding in *Kellogg* makes the point.

---

9. The fund in *Barnes* appears to have resulted from a settlement, not a judgment. 232 U.S. at 118–19, 34 S.Ct. at 276–77.

1. *M.A.P.* holds that we are bound by decisions of the United States Court of Appeals for the District of Columbia Circuit prior to February 1,

1971, and that such decisions and those of this court can be overruled only by the en banc court. 285 A.2d at 312.

2. See majority opinion, p. 8.

In this jurisdiction, language in an agreement between an attorney and client setting compensation at "a sum equal to" a portion of any recovery or equivalent language has been held specifically to be insufficient to create an equitable lien in the client's recovery. *Thurston v. Bullowa,* 42 App.D.C. 18, 21, 23, *cert. denied,* 234 U.S. 756, 34 S.Ct. 674, 58 L.Ed. 1578 (1914) (agreement for compensation in "an amount of at least equal to one third of what would be recovered" held insufficient to establish a charging lien); *DeWinter v. Thomas,* 34 App.D.C. 80, 84–85 (1909) (contract fixing fee at 15% of a sum of money and of the value of certain property held not to create a lien), *cert. denied,* 215 U.S. 609, 30 S.Ct. 411, 54 L.Ed. 347 (1910); *see also Mellon v. Jones,* 60 App.D.C. 269, 270–71, 51 F.2d 431, 432–33 (1931). The "nonpossessory lien of an attorney is a creature of contract." *Pink v. Farrington,* 67 App. D.C. 314, 316, 92 F.2d 465, 467, *cert. denied,* 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 572 (1937). Therefore, whether a lien is created depends upon the language in the contract.

To establish an attorney's lien on a fund not in possession, there must be a "distinct appropriation of the fund by the [client], and an agreement that the [attorney] should be paid out of it," and the contracting party must look strictly to the fund rather than to the client for payment. *Id.* at 316, 92 F.2d at 467. A contract fixing payment at 15% of the sum of money or a sum equal to the market value of certain property is viewed as merely fixing the measure of liability. *DeWinter, supra,* 34 App.D.C. at 85. Unless the agreement provides for a "percentage out of the fund recovered, or words equivalent" importing that intention, no assignment will be found to support imposition of an equitable lien. *Thurston, supra,* 42 App.D.C. at 21–22.

While these principles are reasonably susceptible to a broader interpretation than the earlier cases in this jurisdiction have recognized, those cases have not yet been overruled. Cases cited by the majority to reach a contrary result find an attorney's charging lien based upon language in the contract specifically providing for payment *out of the fund* recovered, as required by *Thurston.* See *Friedman v. Harris,* 81 U.S.App.D.C. 317, 158 F.2d 187 (1946) (attorney has lien for value of services where contract provides for one-third of " 'the sum allowed or recovered' "); *Continental Casualty Co. v. Kelly,* 70 App.D.C. 320, 321, 106 F.2d 841, 842 (1939) (agreement for "33⅓% out of any judgment obtained" is a distinct appropriation of the fund by the client and serves as a contract lien); *Sullivan v. Tobin,* 42 App.D.C. 430, 433 (1914) (lien attaches to settlement where agreement provided for a fixed percentage of " 'all sums recovered *or obtained* by me as aforesaid' ") (emphasis in original); *In re Brass Kettle Restaurant, Inc.,* 790 F.2d 574, 575 (7th Cir.1986) (valid equitable lien created where language used was 40% of any recovery made in the client's behalf). The language in each of these cases is consistent with the language sanctioned in *Thurston, supra,* 42 App.D.C. at 21–22.

The line appears to be drawn between words which specifically state that the attorney is to be paid out of a particular fund, and those which only set compensation at a "sum equal to" a portion of the recovery. The former will result in an equitable lien; the latter will not. The requirement imposed by prior law is strict, but remains in effect pending change by the full court. Any policy concerns created by limiting an attorney to a contract action for payment of fees, absent clear contractual language showing creation of a lien, can be met by a careful wording of the contract as the majority suggests.[3]

It does not appear that *Kellogg, supra,* overruled the earlier decisions which reject the language used in this case as a vehicle for the creation of a lien. In *Kellogg,* the court held only that a contingent fee contract created a present right which vested the attorney with an interest in the cause of action sufficient to allow him to intervene in a suit to protect that interest. 51 App.D.C. at 20, 273 F. at 747–48. This is different from recognizing a lien on a par-

---

3. See majority opinion, p. 1171, n. 8.

ticular fund which may be used to determine the priority of creditors. *Kellogg* does not alter prior law with respect to the contractual language necessary to impose an equitable lien on settlement proceeds. The law remains that absent specific contractual language providing for the attorney to be paid out of the fund, thereby assigning the funds to the attorney, no lien will arise. Under present law, the language used here is insufficient.

On the other hand, I agree with the majority that if a valid equitable lien is created by the fee contract, then that lien attaches to any proceeds of settlement within the control of the court. Therefore, I concur in part III of the majority opinion and its reasoning, except insofar as it holds that the agreement which is the subject of this case created a lien on the fund involved.